FLETCHER et al., Appellees,

v.

DON FOSS OF CLEVELAND, INC., Appellant.

[Cite as *Fletcher v. Don Foss of Cleveland, Inc.* (1993), 90 Ohio App.3d 82.]

Court of Appeals of Ohio,
Cuyahoga County.

No. 62531.

Decided Aug. 2, 1993.

*Matthew F. Browarek,* for appellees.

*Leonard S. Greenwald,* for appellant.

HARPER, Judge.

Appellant, Don Foss of Cleveland, Inc. ("Don Foss"), appeals from the judgment granted by the Cleveland Municipal Court in favor of appellees, Ralph L. Fletcher and Sandra Fletcher ("the Fletchers"), on a deceptive trade practices complaint filed against appellant by the Fletchers. For the reasons set forth below, we affirm in part and reverse in part.

## I

The Fletchers purchased a 1984 Volkswagen Jetta from Don Foss on July 15, 1989. At the time of the purchase, the Fletchers signed certain documents, to wit: Used Car Order, Buyers Guide, and All Sales Final. One of the documents has the following inscription: "AS IS—NO WARRANTY."

In addition to the "No Warranty" statement in the agreement, the Fletchers were presented with a Limited Warranty Certificate providing 50/50 coverage with Don Foss assuming fifty percent cost of all repairs relative to transmission rear end and universal-joint problems. Also found in the agreement are the following words: "you (meaning the purchaser) will pay all costs for repairs."

Mr. Fletcher testified that he read the certificate of limited warranty, but thought it covered all major repairs. Mrs. Fletcher testified that they were told that the warranty was "like extra coverage for the car in case anything happened to it, we can bring it back." "We thought it was like an extended warranty on what—if anything happened to the car within a 12–month period, that we could bring it back to get repaired."

The Fletchers testified that the sales person for Don Foss, Patrick Petrella, informed them that the car was dependable, sturdy and reliable. This testimony was refuted by Mr. Petrella, who admitted telling them that in his opinion, based on his experience, foreign cars are more dependable.

The Fletchers' total cost for the car including finance charges was $6,869.90, which payment they completed in July 1991. On the same day shortly after the agreement was concluded, the car overheated as the Fletchers drove it off the lot to their home. Don Foss towed the car and had it repaired at no cost to the Fletchers. The vehicle was returned to the Fletchers two weeks later.

Mrs. Fletcher testified that one week after it was repaired, the car overheated again and they went back to Don Foss. At this time, they intended to make use of what they understood was an extended warranty in their agreement but were told it was a limited warranty covering only the drive-train repairs. They were also told that thirty days had elapsed. According to Mrs. Fletcher, "he sympa-

thized with us and said there is nothing he could do; it was over the 30 days, plus it was an as is * * *."

The car was taken to Ellacott Shaker Volkswagen ("Ellacott") for repairs on August 30, 1989. The cost of the August 30, 1989 repair was $402.05. The car broke down again and was repaired by Ellacott on September 26, 1989. On October 30, 1989, which was the last breakdown, it was determined by Ellacott that there was no coolant in the radiator, the power steering pump was missing, there was a bent oil pan and a problem with the electrical system, and the engine would not crank. It would cost about $3,800 to repair.

## II

Appellant assigns the following errors for our review:

"1. The trial court committed error in that the judgment for the plaintiffs was against the manifest weight of the evidence.

"2. The trial court committed error in that the judgment for the plaintiffs was not supported by sufficient evidence.

"3. The trial court committed error in finding that defendant committed an unfair or deceptive act or practice pursuant to O.R.C. 1345.02(B)(10).

"4. The trial court committed error in awarding attorney fees to the plaintiffs."

Since the first three assignments of error present only one issue, whether appellant committed an unfair or deceptive act or practice, they will be treated together.

Appellant argues that it did not commit any unfair or deceptive practice because appellees signed the agreement which was plain that the car they were buying was "AS IS—NO WARRANTY." Appellant, however, acknowledges that appellees were given on the same day of the car purchase "a written limited warranty on the drive train" at no cost to them. Appellant further argues there is no evidence that appellees were given a thirty-day warranty.

R.C. 1345.02 provides:

"(A) No supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction. Such an unfair or deceptive act or practice by a supplier violates this section whether it occurs before, during, or after the transaction.

"(B) Without limiting the scope of division (A) of this section, the act or practice of a supplier in representing any of the following is deceptive:

"* * *

"(10) That a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

R.C. 1345.02 contains a list of acts and practices deemed to be "false, misleading, or deceptive." If any of those listed acts or practices is found factually to have happened, it is by law an unlawful deceptive practice because R.C. 1345.02(A) makes it unlawful.

■ It is also important to note that intent or knowledge is not an element of a Consumer Sales Practices Act ("CSPA") laundry list claim unless the Act itself requires intent. The Ohio legislature knew how to include an intent or knowledge requirement when it desired to do so. Thus, a consumer establishes a claim under the CSPA by providing facts that establish an act or practice described in R.C. 1345.02. It is not a defense to show that the act was not done intentionally, or without knowledge that it was false, misleading or deceptive. *Thomas v. Sun Furniture & Appliance Co.* (1978), 61 Ohio App.2d 78, 11 O.O.3d 26, 399 N.E.2d 567. The boundaries of illegality under CSPA must remain flexible because it is impossible to list all methods by which a consumer can be misled or deceived. The flexibility is inherent in the statutory scheme and should not be reduced by an intent or knowledge requirement. See *Brown v. Bredenbeck* (C.P.1975), 2 O.O.3d 286.

In our free market system, the warranty attached to a product is an important if not a deciding factor in many consumers' decisions to buy the product. Therefore, misrepresentations regarding a warranty or guarantee have the same potential if not more for abuse as do those concerning the product itself. R.C. 1345.02(B)(10) recognizes this and defines as deceptive a transaction which leads a consumer into believing "[t]hat a consumer transaction involves or does not involve a warranty, a disclaimer of warranties or other rights, remedies, or obligations if the representation is false."

Thus, under this subsection, it would be a violation of the CSPA to tell a consumer that something was under "warranty" and then refuse to take any action to remedy a problem when the goods promptly break down; it would also be a violation to lead a consumer to believe that a product was under warranty for a certain period when in fact the contract limited the guarantee or warranty to a shorter period.

■ In the instant case, appellant states that:

"*Construing the circumstances in this case most strongly in Plaintiffs' favor might allow for a conclusion that there may have been some confusion on their part as to any warranties or the disclaimer thereof.* However, the weight and

the sufficiency of the evidence does [*sic*] not support a finding of an 'unfair or deceptive act or practice' pursuant to O.R.C. 1345.02(B)(10)." (Emphasis added.)

Appellant's above admission of a possible misleading warranty or disclaimer provision is an acute understatement that cannot be so casually explained and disregarded within the intent of the Act. The sole purpose of the Act is to protect consumers and eradicate deceptive trade practices, which necessarily entails a liberal interpretation of the Act to effectuate the legislative intent. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 548 N.E.2d 933. See, also, *Brown v. Lancaster Chrysler–Plymouth, Inc.* (C.P.1976), 4 O.O.3d 70. To that end, we hold that some overlap may occur as a result of broadly interpreting the listed violations in R.C. 1345.02. A broad interpretation is warranted, however, due to human inventiveness in engaging in deceptive or misleading conduct. The Ohio legislature did not intend its express purpose of protecting consumers from false trade practices to be circumvented by those who seek loopholes in the Act's provisions. See *Pennington v. Singleton* (Tex.1980), 606 S.W.2d 682, 688.

In the instant case, the record shows that appellees signed an agreement which purports to disclaim all warranties by the words sold "AS IS—NO WARRAN-TY." In another form, appellees were given a certificate of limited warranty which by definition nullified the "AS IS—NO WARRANTY" provision and also was misleading, as you cannot make by plain meaning of the English language "NO WARRANTY" and "LIMITED WARRANTY" consistent with each other.

Furthermore, it is uncontroverted that the car broke down a few minutes after purchase and in spite of the "AS IS—NO WARRANTY" provision in the contract, appellant towed the car to its premises and repaired it at appellant's cost. This fact no doubt negates the "AS IS—NO WARRANTY" provision and supports appellees' contention that they were given a thirty-day express warranty, or at the least were led to believe that they had one.

The trial court held, based on the testimony of appellees which was not contested, that the car was brought back to appellant's about thirty-five days after the sale and appellant refused to repair it, claiming that the thirty-day warranty had expired. The approximate thirty-five days' determination by the trial court is supported by the testimony of the Fletchers that the car broke down only one week and a half after it was returned in early August 1989 by appellant. They subsequently took it back to appellant, who refused to repair it, claiming that thirty days had elapsed. On August 30, 1989, the car was towed to Ellacott, where it was repaired. From the testimony presented, the trial court could reasonably conclude that if the car was towed to Ellacott on August 30, 1989, which was after appellant refused to repair the car, it could not have taken more than five days from the middle of August, when the car broke down to the time it was taken back the second time to appellant for repair.

■ Having decided that the thirty-five days was supported by the evidence, we shall now address the violation itself. We shall do that by first explaining the relationship between warranties or disclaimers and CSPA, since appellant stresses that the "AS IS—NO WARRANTY" clause in the agreement is its authority not to be found in violation of CSPA. This is a misunderstanding of the Act. R.C. 1345.02 does not create any warranties nor should it alter the existence of such warranties by affecting otherwise valid disclaimers. If a claim is brought based on a laundry list violation, as enumerated by the Act, instead of a breach of warranty, any disclaimer of the warranty would be ineffective against the laundry list claim. See, e.g., *High Plains Natural Gas Co. v. Warren Petroleum Co.* (C.A.10, 1989), 875 F.2d 284.

■ In the case before us, we are dealing with a cause of action based solely upon false and misleading representations and not upon breach of warranty. Therefore, appellees' failure to file a breach of warranty action pursuant to R.C. 1302.26 as argued by appellant did not waive appellees' cause of action for misrepresentation under CSPA and the waiver was properly ignored.

■ On July 15, 1989, appellees purchased the car. On the same day, the car broke down and was towed by appellant to its place of business for repairs. Appellant held the car for two weeks (until the first week of August) before giving it back to appellees. Appellant paid for the cost of the repair in spite of the following provisions in the agreement: "As is-no warranty. You will pay all costs for any repairs. The dealer assumes no responsibility for any repairs regardless of any oral statement about the vehicle." The repairing of the car at no cost to the Fletchers fostered their belief and supports their claim of a thirty-day warranty. Appellant could not have repaired the car at no cost to appellees unless it warranted to so repair. The warranty period was tolled during the two weeks appellant had the car for repair. The purpose of the warranty was to cover the period the Fletchers had the use of the car. *Richardson v. Car Lot Co.* (1983), 10 Ohio Misc.2d 32, 10 OBR 539, 462 N.E.2d 459. When the Fletchers brought the car back approximately thirty-five days after it was purchased, it was still within the thirty-day warranty due to the two-week delay in making the repair, which is charged to appellant. Therefore, when the Fletchers came back within the warranty period as they were led to believe and were told that the transaction which had a warranty no longer involved a warranty, R.C. 1345.-02(B)(10) was violated. The "AS IS—NO WARRANTY" clause printed on the agreement was not part of the understanding between the parties, as the record indicates.

If the act or practice in dispute is one of those specifically listed under R.C. 1345.02, the trier of fact is asked if the act or practice occurred. Its function is not to determine if the act or practice is a deceptive practice. If the determina-

tion is made by the trier of fact that the act or practice did indeed occur, the act or practice is a deceptive practice as a matter of law, because R.C. 1345.02 declares the practice to be unlawful.

In the instant case, the trial court, being the trier of fact, examined all the facts and concluded that the act did occur, and, therefore, was deceptive under R.C. 1345.02(B)(10). As the Ohio Supreme Court held in *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 19, 526 N.E.2d 1350, 1357:

" * * * In reviewing the court's judgment, we are guided by the principle that judgments supported by competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence, *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 8 O.O.3d 261, 376 N.E.2d 578. Every reasonable presumption must be made in favor of the judgment and the findings of facts. *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 10 OBR 408, 461 N.E.2d 1273. Finally, if the evidence is susceptible of more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the trial court's verdict and judgment." (Other citations omitted.)

Since the facts support the trial court's conclusion that a violation of CSPA occurred, we overrule appellant's first, second and third assignments of error.

### III

Appellant argues in its fourth assignment of error the trial court improperly awarded attorney fees to appellee's counsel. Appellant argues:

"There was no evidence presented (subject to cross-examination) as to the reasonable value of appellees' attorney fees. Furthermore, there was no evidence presented to allow a conclusion that appellant intentionally committed an act in violation of O.R.C. Section 1345."

R.C. 1345.09(F)(2) provides as follows:

"(F) The court may award to the prevailing party a reasonable attorney's fee limited to the work reasonably performed, if either of the following apply:
" * * *

"(2) The supplier has knowingly committed an act or practice that violates this chapter."

Appellant's first contention is that there was no evidence presented subject to cross-examination on the issue of attorney fees. This argument has no merit. Appellant's counsel was present in court when appellees' counsel argued the issue of attorney fees to the court. Appellant's counsel neither objected nor cross-examined him on the subject. It would be improper for this court to

reverse on appellant's counsel's failure to cross-examine when the opportunity to cross-examine was presented at the trial level and was declined. See *State v. Williford* (1990), 49 Ohio St.3d 247, 251, 551 N.E.2d 1279, 1282–1283; *Kuenzer v. Teamsters Union Local 507* (1981), 66 Ohio St.2d 201, 20 O.O.3d 205, 420 N.E.2d 1009; *Kalish v. Trans World Airlines* (1977), 50 Ohio St.2d 73, 4 O.O.3d 195, 362 N.E.2d 994.

Appellant further argues that attorney fees were improper since knowledge was not proved. The Ohio Supreme Court in *Einhorn, supra,* addressed the issue of "knowingly" in R.C. 1345.09(F)(2) as intended by the legislature and held:

"This legislative purpose is better safeguarded by finding that 'knowingly' committing an act or practice in violation of R.C. Chapter 1345 means that the supplier need only intentionally do the act that violates the Consumer Sales Practices Act. The supplier does not have to know that his conduct violates the law for the court to grant attorney fees." 48 Ohio St.3d at 30, 548 N.E.2d at 936.

The court continued:

"We find that the plain meaning of R.C. 1345.09(F)(2) dictates the *Brooks [v. Hurst Buick–Pontiac–Olds–GMC* (1985), 23 Ohio App.3d 85, 23 OBR 150, 491 N.E.2d 345] result and comports with the legislative intent. The language ' * * * knowingly committed an act or practice that violates this chapter' requires that for liability to attach, a supplier must have committed a deceptive or unconscionable act or practice. This conduct must violate the Consumer Sales Practices Act. The statutory language does *not* state that the supplier must act with the knowledge that his acts violate the law, as appellee contends. 'Knowingly' modifies 'committed an act or practice' and does not modify 'violates this chapter.' " (Emphasis *sic.*) *Id.* at 30, 548 N.E.2d at 936.

Since the trial court determined from the facts that appellant's conduct violates the Act, on the authority of *Einhorn, supra,* attorney fees can be properly awarded. However, we note that the only evidence presented was appellees' attorney's testimony that he charged $2,000 in two previous cases. Attorney fees in CSPA violations cannot be based on a standardized fee but must be determined on a case-by-case basis based on the number of hours reasonably expended plus other factors that might be applicable. Cf. *Hensley v. Eckerhart* (1983), 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40, 50.

While the trial court could have found that $2,000 was reasonable when a proper determination is made, the record in the instant case precludes us from determining what factors the court considered or the weight, if any, it placed on those factors. "When making a fee award pursuant to R.C. 1345.09(F)(2), the trial court must state the basis for the fee determination. Absent such a statement, it is not possible for an appellate court to conduct a meaningful

review." *Bittner v. Tri–County Toyota* (1991), 58 Ohio St.3d 143, 146, 569 N.E.2d 464, 467.

In the instant case, the trial court should first calculate the number of hours reasonably expended on the case times an hourly fee, and then may within its discretion modify that calculation by application of the factors listed in DR 2–106(B), if applicable. *Tri–County, supra.*

Accordingly, we affirm the trial court's judgment on the violation of CSPA and reverse and remand the cause for disposition of the attorney fees consistent with this opinion.

*Judgment accordingly.*

PRYATEL, J., concurs.

DYKE, C.J., concurs separately.

AUGUST PRYATEL, J., retired, of the Eighth Appellate District, sitting by assignment.

DYKE, Chief Justice, concurring separately.

I concur in the majority opinion but write separately to delineate the specific conduct on the part of the appellant which rendered the instant transaction deceptive and, hence, violative of the Consumer Sales Practice Act. (R.C. 1345.02[B][10].)

My concern with the majority's analysis is that it sweeps too broadly, implicating as deceptive certain dealer practices which are not necessarily unfair or deceptive.

The majority holds that the "appellees were given a certificate of limited warranty which by definition nullified the 'AS IS—NO WARRANTY' provision and also was misleading, as you cannot make by plain meaning of the English language 'NO WARRANTY' and 'LIMITED WARRANTY' to be consistent with each other." The majority suggests that the provision of these documents constitutes a deceptive sales practice.

The record demonstrates, however, that the appellees were given a "Free Limited Warranty" on the drive train of their "As Is—No Warranty" vehicle. The trial court also regarded this distinction in its findings of fact, at paragraph two of its judgment entry, where it stated: "That Plaintiffs' Exh. #2 is a Free Limited Warranty on the Drive Train (50/50) of the 'As Is'—'No Warranty' vehicle in question."

The mere provision of an "As Is—No Warranty" purchase agreement along with a "Free Limited Warranty" on a specific part of an automobile does not

necessarily constitute an unfair or deceptive sales practice violative of R.C. 1345.02(B)(10).

In the instant case, the appellees testified that they were confused by these documents and this court does not doubt their confusion. However, documents such as those provided to the appellees do not automatically or necessarily operate to "nullify" one another. If properly drafted and clearly explained, these documents can reasonably be construed to mean that an automobile dealer is selling and a consumer is purchasing an automobile which is completely unwarranted except for coverage on a limited number of certain, specific parts.

There is nothing false or misleading about selling an automobile which carries no warranty, if the consumer is clearly made to understand that the automobile is being sold based upon that condition. There is also nothing false or misleading about offering a clearly defined and well-explained warranty, free or at cost, which covers certain specified repairs on the generally unwarranted vehicle.

The majority also holds that the appellant's act of paying for the repair of the automobile which broke down within minutes of the sale is evidence of a withheld warranty.

In my opinion, neither of the above cited gestures constituted unfair or deceptive sales practices.

The provision of a limited warranty on the drive train of appellees' automobile is not necessarily inconsistent with the sale and purchase of a generally unwarranted vehicle. The repairs undertaken by the appellant address its blatant breach of an implied warrant of merchantability. The repairs do not necessarily establish the existence of a separate warranty on all parts for an extended period of time.

The specific conduct which rendered the instant transaction deceptive was the statement that the appellant made to the appellees when the appellees presented their chronically defective automobile for repair, thirty-five days after the date of purchase.

At that time, the appellant told the appellees that their "thirty day warranty or privilege" had elapsed.

This retroactive and untimely disclosure of the existence of a thirty-day warranty is the type of deceptive conduct which R.C. 1345.02(B)(10) seeks to sanction.

Without appellant's admission of the existence of a "thirty day warranty or privilege," there would have been no evidence that a deceptive sales practice had occurred. There would, however, have been an unconscionable breach of the implied warrant of merchantability.