OPINION
Al Castrucci, Inc. and The Provident Bank appeal from an order of the trial court awarding treble damages and attorney fees pursuant to the Ohio Consumer Sales Practices Act ("CSPA") to Kelly Birch, a consumer who had purchased a vehicle from Castrucci that was damaged and repaired prior to sale.
Birch went to Castrucci's Mazda dealership in December 1993 to shop for a car. She took a 1993 Mazda Protege on a test drive with Brian Birch, her brother, and Jeff Fetzer, a sales agent for the dealership. Fetzer told Birch that the vehicle had been damaged. Birch returned the next day with her mother. Birch again drove the vehicle and was again told by Fetzer that it had been damaged.
The manufacturer's suggested retail price of the vehicle was $14,589. Birch made an oral offer to purchase the vehicle for $11,500. Fetzer then completed a written "Offer to Purchase" form containing four sections labeled: "Total Investment," "Cash Down Payment," "Trade-in," and "Terms." Fetzer wrote, "Will buy today at $11,500," in the box labeled "Terms," and asked Birch to sign the form. She did. Fetzer presented Birch's written offer to Richard Paige, the sales manager, who made a written counteroffer on the form for $11,689.04 plus tax and title. Fetzer returned to Birch and showed her the "Offer to Purchase" containing the $11,689.04 counteroffer. Birch orally accepted the counteroffer.
Fetzer next gave Birch a copy of a Repair Order showing the repairs that Castrucci had made to the vehicle and their cost. The Repair Order indicated that the total cost of the repairs performed was $8,412.65. Fetzer asked Birch to sign the Repair Order to acknowledge receipt, which she did. Birch then met with a person from Castrucci's finance department to complete various documents required for the sale. The Provident Bank subsequently financed the purchase money loan of $11,518.69 to Birch.
In April 1994, Birch noticed that the vehicle's sunroof was not in line with the roof, that the paint was running on the right side of the vehicle, and that there were chips in the paint on the roof. Birch went to the dealership and complained of these defects. A Castrucci employee filled out a "Request for Goodwill Adjustment," detailing Birch's problems with the vehicle. The employee promised that a factory representative would inspect the vehicle, but that did not occur.
Birch filed a complaint against Castrucci and Provident Bank, alleging that Castrucci had violated the CSPA by not disclosing the extent of damage her vehicle had suffered. She also alleged that Castrucci had engaged in fraud by making false representations of fact on which she had relied to her detriment.
At trial, Birch testified that Jeff Fetzer, the sales agent for the dealership, told her that the vehicle had been involved in a small "fender bender" on the lot and that, as a result, its right rear quarter panel had been replaced. (Tr. 468). She stated that when she asked if that was the extent of damage to the vehicle, Fetzer had said that it was. (Tr. 582). She also testified that there was nothing posted on the vehicle's windows or within its interior that disclosed the damage. (Tr. 456, 475).
Fetzer testified that he told Birch that "the car was a demo and it had been in an accident, and that it had some miles on it." (Tr. 692). He also testified that he did not know where, when, or how the accident had happened. (Tr. 693-94). He stated that the Repair Order was in the vehicle's glove compartment and that Brian Birch had seen the Repair Order when he examined the contents of the glove compartment during their test drive. (Tr. 694-95). Fetzer further stated that it was Castrucci's company policy to disclose damage to a vehicle as soon as a sales person approached a potential customer. (Tr. 693).
Richard Paige, the sales manager for Castrucci, testified that when a vehicle had been damaged and was repaired, a copy of the Repair Order showing the repairs made and their cost was kept in a plastic sleeve on the vehicle's window. A yellow copy of the Repair Order was kept in Paige's office. (Tr. 776). The yellow copy was then presented to a customer who had signed a written "Offer to Purchase" the vehicle, along with the sales manager's acceptance of the offer or his counteroffer. The customer was then asked to sign the yellow copy of the Repair Order to indicate he or she had seen it. (Tr. 776-77).
Frank Castrucci, the owner of the dealership, also testified. In his testimony, which was similar to Paige's, he stated:
 [B]y bringing a copy for the Body Shop to the Sales Department, . . . the . . . document is then to be, . . . attached to the manufacturer's invoice. And a copy of that is to be placed inside the automobile.
 . . . [I]t starts off in the — in the plastic packet that we hand in the window where the "as-is" label is. Oftentimes it's removed from there as we show it to many customers and, . . . hopefully they put it back, sometimes they don't. But it's always inside the car.
(Tr. at 1041).
Birch called Louis Boehman, a Professor of Mechanical Engineering, as an expert witness. Boehman opined that the value of the vehicle on the day that Birch purchased it was half of the manufacturer's sticker retail price (MSRP). He based his opinion on his inspections of the vehicle, his experience at car auctions, and the value of the repairs that had been made to the vehicle, which were more than fifty percent of the vehicle's MSRP. (Tr. 335-36). Boehman concluded that the vehicle was worth seven to eight thousand dollars when Birch purchased it. (Tr. 337).
The magistrate entered a decision in favor of Birch, finding that Castrucci misrepresented the characteristics and quality of the vehicle Birch had purchased by failing to disclose the full extent of the prior damage and repair. The magistrate awarded actual damages of $5,794.50, the difference between the sales price and Boehman's opinion of the diminution in its value. The magistrate awarded treble damages and attorneys fees because Castrucci had failed to disclose the damage and repairs in a timely manner. However, the magistrate found against Birch on her fraud claim.
Castrucci filed objections. The trial modified the magistrate's findings, but adopted the same award of damages and attorneys fees. The total value of the judgment the court awarded to Birch against Castrucci and The Provident Bank was $50,556.00.
Castrucci and The Provident Bank timely appealed, presenting four assignments of error. Birch cross-appealed, presenting two assignments of error. Birch subsequently withdrew her cross-appeal.
 FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT MISSTATED OHIO LAW GOVERNING THE DISCLOSURE OF PREVIOUS DAMAGE TO NEW CARS.
R.C. 1345.02(B) contains a non-exclusive list of acts and practices that the General Assembly has prohibited as unfair or deceptive. The General Assembly also has charged the Attorney General with adopting rules that define "with reasonable specificity" what is an unfair and deceptive act or practice. R.C. 1345.05(B)(2). Pursuant to that authority, the Attorney General has adopted Ohio Adm. Code 109:4-3-16(B) (14), which states:
 It shall be a deceptive and unfair act or practice for a dealer, in connection with the advertisement or sale of a motor vehicle, to . . . [f]ail to disclose prior to the dealer's obtaining signature by the consumer on any document for the purchase of the vehicle, any defect and/or the extent of any previous damage to such vehicle, retail repair cost of which exceeds or exceeded three hundred dollars excluding damage to glass, tires and bumper where replaced by identical equipment.
Castrucci argues that the written "Offer to Purchase" that it asked Kelly Birch to sign, and which she did sign before being shown the Repair Order, is not a "document for the purchase of the vehicle" for purposes of Ohio Adm. Code 109:4-3-16(B) (14). Castrucci contends that the regulation contemplates contracts of sale, the contents of which are prescribed by R.C. 4517.26, and that, in any event, it was not required to reveal the nature and extent of the damage to the vehicle before any price negotiations. In support of the latter contention Castrucci relies on the judgment of this court in Turner v. Bob Ross Buick, Inc. (Nov. 22, 1993), Montgomery App. No. 13809, unreported, and the judgment of the Tenth District Court of Appeals in Ford v. Brewer (Dec. 9, 1986), Franklin App. No. 86AP-626, unreported.
The disclosures that Ohio Adm. Code 109:4-3-16(B) (14) requires must be made before the dealer procures the consumer's signature on a document, not before price negotiations commence. Further, neither Turner nor Ford involved application of Ohio Adm. Code109:4-3-16(B) (14). Therefore, the judgments rendered in those cases are of no assistance here.
Castrucci is correct that the "Offer to Purchase" that Kelly Birch signed is not a contract for sale of a motor vehicle pursuant to R.C. 4517.26. That section requires many specifics that the "Offer to Purchase" which Birch signed does not contain. However, Ohio Adm. Code 109:4-3-16(B) (14) neither references R.C.4517.26 nor otherwise limits its application to a contract or to documents forming a contract. It applies only to "any document for the purchase of the vehicle." A document that the consumer signs containing the price she offers to pay for a specific vehicle satisfies that requirement. By way of contrast, a credit application that does not pertain to any vehicle in particular would not.
The evil that Ohio Adm. Code 109:4-3-16(B) (14) was intended to prevent is creating a sense of obligation in the consumer to purchase a vehicle when the dealer has failed to disclose costs of repairs that may substantially affect its true value. In this case, the regulation would have been satisfied had Castrucci presented the Repair Order to Birch for her review before it presented the Offer to Purchase for her to sign. The particular order of events that did occur supports a conclusion that the dealer succeeded in creating the situation that the regulation was intended to avoid by evading its requirements.
The trial court was correct in applying Ohio Adm. Code109:4-3-16(B) (14) as it did, which permitted it to find that Castrucci had engaged in an unfair or deceptive act or practice. The first assignment of error is overruled.
 SECOND ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED WHEN IT AWARDED TREBLE DAMAGES.
 THIRD ASSIGNMENT OF ERROR
THE TRIAL COURT ERRED WHEN IT AWARDED ATTORNEY FEES.
R.C. 1345.09(B) and (F) authorizes a court to award damages three times the actual amount of proved and reasonable attorney fees upon proof that the supplier committed the CSPA violation knowingly. A supplier acts "knowingly" if it intentionally committed the act involved.See Einhorn v. Ford Motor (1990), 48 Ohio St.3d 27. The statute does not require that the supplier must know that it was violating the law. See Fletcher v. Don Foss ofCleveland, Inc. (1993), 90 Ohio App.3d 82.
Castrucci obtained Birch's signature on the "Offer to Purchase" prior to showing her the Repair Order. It is irrelevant that Castrucci did not know it was violating the CSPA in so doing. Because of the resulting CSPA violations, Birch had the option of either rescinding the contract or seeking treble damages. Birch chose to do the latter. The trial court thus did not err in awarding to Birch three times her actual damages and attorney fees, unless Castrucci can prove a defense., Appellants argue that R.C. 1345.11(A) provided Castrucci an affirmative defense to the imposition of treble damages and attorney fees. That section states:
 [I]f a supplier shows by a preponderance of the evidence that a violation resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adopted to avoid the error, no civil penalties shall be imposed against the supplier under division (D) of section 1345.07 of the Revised Code, no party shall be awarded attorney's fees, and monetary recovery shall not exceed the amount of actual damages resulting from the violation.
However, "neither good faith nor substantial compliance is itself a defense." Andrews v. Scott Pontiac Cadillac GMC (1991),71 Ohio App.3d 613, 621.
"[T]he issue of reasonableness is a question of fact or a mixed question of law and fact." Itskin v. Restaurant Food SupplyCo. (1982), 7 Ohio App.3d 127, 130. Absent an abuse of discretion, a trial court's factual determination will not be disturbed on appeal. Abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219.
As proof of a policy that would constitute an R.C. 1345.11(A) defense, both Frank Castrucci and Richard Paige, the sales manager, testified that a copy of the Repair Order is routinely put into a plastic sleeve kept on the window of a car that has been repaired. However, Frank Castrucci conceded that the Repair Order is sometimes removed from the plastic sleeve. Paige testified that Castrucci's policy was to show the customer the Repair Order when the dealer accepted the offer or made a counteroffer, after the customer had made a written offer to purchase the vehicle.
The trial court found that "Castrucci's policy of withholding the actual extent of such damage, until after a sales price is agreed upon is not a procedure `reasonably adopted to avoid the error' of failing to disclose the extent of damage. In this case, the error occurred as a result of actions in compliance with those procedures."
The finding that the trial court made is not wholly consistent with the evidence of the policy that Castrucci sought to prove. The Repair Order was not routinely withheld until after a price had been agreed upon, as the court found, but was withheld until after the customer had made a written offer to purchase. In either event, however, the court could properly find that, for purposes of R.C. 1345.11(A), the purported policy was not one reasonably calculated to avoid the error out of which the CSPA violation arose. The court appears to have also drawn that conclusion concerning the "policy" of putting a copy of the Repair Order in a plastic sleeve kept on the vehicle's window.
We cannot find that the trial court's attitude in rejecting Castrucci's policy defense, so as to award treble damages and attorney fees, was unreasonable, arbitrary, or unconscionable.Blakemore v. Blakemore, supra. Therefore, Appellant's second and third assignments of error are overruled.
 FOURTH ASSIGNMENT OF ERROR THE TRIAL COURT ERRED WHEN IT ADMITTED PLAINTIFF'S EVIDENCE OF THE FAIR MARKET VALUE OF PLAINTIFF'S CAR ON THE DATE OF PURCHASE AND AWARDED ACTUAL DAMAGES BASED ON THE EVIDENCE.
At trial, Birch asked Boehman whether he had an opinion as to the value of the car at the time she purchased it. Castrucci objected to Boehman's testimony, arguing that facts on which the opinion could be based were not in evidence. (Tr. 334). The magistrate agreed, stating that "it's not in evidence yet as to whether or not the vehicle was in the same condition . . . at the time sale" as it was at the time of Boehman's inspection of it. (Tr. 334). Boehman then testified that, based on his inspections and experience, the value of the car at the time of purchase was half of its retail value. (Tr. at 336).
Later, Birch also asked Boehman whether having been wrecked affects the value of a car at an auto auction. Castrucci objected, arguing that the expert's "personal experience at car auctions is [not] relevant to any issue in this case." (Tr. at 436). The magistrate overruled the objection, stating that the question was proper redirect. Boehman then testified that purchasers experienced in auto auctions would not bid on a wrecked car because they would not want the trouble. (Tr. at 437).
Castrucci argues that the trial court erred in admitting Boehman's testimony because he was not qualified as an expert pursuant to Evid.R. 702. However, that alleged defect was not the subject of Appellant's objections at trial to Boehman's testimony.
"Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . . a timely objection or motion to strike appears of record stating the specific ground of objection, if the specific ground was not apparent from the context. . . ." Evid.R. 103(A) (1). Because Castrucci did not object at trial to Boehman's qualifications as an expert, the Appellants have waived any argument that the trial court erred in respect to his qualifications., Appellants present additional arguments regarding other evidence as to the value of the vehicle, whether the trial court construed the elements of the CSPA, and whether the trial court accurately applied the CSPA elements. However, these arguments are not within the ambit of the error assigned. See App.R. 16(A) (7). We have thus disregarded these arguments., Appellants' fourth assignment of error is overruled.
Having overruled all of Appellants' assignments of error, the judgment of the trial court will be affirmed.
WOLFF, J. and YOUNG, J., concur.
Copies mailed to:
Ronald L. Burdge, Esq.
Martina M. Dillon, Esq.
Timothy C. Sullivan, Esq.
Michael E. Clancey, Esq.
Jay F. McKirahan, Esq.
Keith E. Whann, Esq.
Norman Barron, Esq.
Hon. James J. Gilvary c/o Hon. Barbara P. Gorman