DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 INTRODUCTION {¶ 1} Fred Gallagher purchased a used van equipped with a wheelchair lift from WMK Inc., dba Mobility Works. The parties included "as is — no warranty" language in the purchase documents. Two days after the sale, the lift malfunctioned while Mr. Gallagher's wife was on it, nearly causing her to fall from her wheelchair. After Mobility Works' repair attempt failed, Mr. Gallagher tried to revoke his acceptance of the van. When Mobility Works refused his revocation, Mr. Gallagher sued Mobility Works for breach of contract and *Page 2 
violations of the Ohio Consumer Sales Practices Act. The trial court granted summary judgment to Mobility Works on both claims. This Court affirms the trial court's judgment on the breach of contract claim, but reverses its judgment on the Consumer Sales Practices Act claim. There are no genuine issues of material fact regarding whether the van had a non-conformity under Section 1302.66 of the Ohio Revised Code, and Mobility Works is entitled to judgment as a matter of law on the breach of contract claim. There are genuine issues of material fact, however, regarding whether Mobility Works repaired the vehicle as it claimed and whether it represented that the wheelchair lift was "safe" when, in fact, it was not.
 FACTS {¶ 2} In early 2004, Fred Gallagher, who was then 82 years old, began shopping for a used van. Since his wife was confined to a wheelchair, he visited a car lot run by WMK Inc., dba Mobility Works in Akron, a company that specialized in selling vehicles fitted with wheelchair lifts.
 {¶ 3} According to Mr. Gallagher, he visited Mobility Works only once, on February 10, 2004. On that visit, he discussed his needs with a Mobility Works salesman named Steve Graybill. According to Mr. Gallagher, he made it clear to the salesman that he needed a wheelchair lift that was "safe" because the van was to be used to transport his disabled wife and Mr. Graybill assured him that the wheelchair lift on the van he was looking at was "safe." Mr. Gallagher claims he *Page 3 
completed the cash purchase of a 1993 Chevrolet Sport Van G-20 with an odometer reading of 135,299 miles based upon Mr. Graybill's assurance.
 {¶ 4} The parties disagree about the number of times Mr. Gallagher consulted with Mr. Graybill prior to the sale. Mr. Graybill testified at his deposition to a number of pre-sale conversations with Mr. Gallagher regarding his search for a specially equipped van in his price range. The testimony of the parties is unclear regarding the details of the pre-sale inspection of the vehicle. Mr. Gallagher testified at deposition that before the sale was completed, he had to wait because the van was in the service department due to a problem with the lift. Mobility Works has not disputed that. The parties agree that, when Mr. Graybill returned with the van, Mr. Gallagher tested the wheelchair lift, found it satisfactory, and completed the purchase. Mr. Gallagher testified at his deposition that he was satisfied with the van and the wheelchair lift when he took possession of it.
 {¶ 5} In completing the purchase, Mr. Gallagher signed various documents, several of which purported to exclude all warranties on the vehicle. Although Mr. Gallagher did not recall signing, or even reading, these documents, he testified that his signature does appear on many of them. Although the face of the contract does not mention warranties issued by the dealer, the Vehicle Delivery Report and Limited Warranty statement are specifically incorporated into the contract by reference. *Page 4 
 {¶ 6} The Limited Warranty provides, under the heading of "2. PARTS OF VEHICLE COVERED BY LIMITED WARRANTY," that the van is being sold "AS IS — NO WARRANTY." This notation appears in capital letters and is of a larger typeface than the surrounding text. The next section provides that "Any part of the vehicle which is not listed in Section 2 above is excluded from coverage under this Limited Warranty." Neither the wheelchair lift nor any other part of the vehicle is listed for inclusion in any limited warranty. Mr. Gallagher testified his signature appears at the bottom of this page.
 {¶ 7} Additionally, on a document entitled Buyer's Guide, a box is checked next to the words: "AS IS-NO WARRANTY." Those words appear in bold capital letters, in a much larger typeface than the surrounding text. Beneath those words, the document provides: "The dealer assumes no responsibility for any repairs regardless of any oral statements about the vehicle." Under the heading "Systems Covered," capital letters again provide: "SOLD AS IS — NO WARRANTY." Mr. Gallagher has admitted that he was aware he was accepting the van on an "as is" basis. He has argued, however, that he was not aware that the "as is" language extended to the wheelchair lift as well.
 {¶ 8} Mr. Gallagher has testified that the lift operated correctly for two days after delivery. Then, while Mrs. Gallagher was on the lift, it fell from a height of about one foot. According to Mr. Gallagher, his wife nearly fell from *Page 5 
her wheelchair. After that incident, Mrs. Gallagher was afraid to use the wheelchair lift.
 {¶ 9} Mr. Gallagher called Mr. Graybill to report the problem with the lift as well as a problem with the van's brakes. Mobility Works sent a tow truck to retrieve the van and had both problems serviced at no expense to Mr. Gallagher. According to Mobility Works, it completed $1,600 worth of free repairs to foster good will and ensure customer satisfaction.
 {¶ 10} Following the repair work, Mr. Graybill took the van back to Mr. Gallagher's house and attempted to re-deliver it. Mr. Graybill assured Mr. Gallagher that the pump on the lift had been replaced and the problem with the lift was, therefore, resolved. According to Mr. Gallagher, the wheelchair lift, at that time, would not operate with two men on it. He testified that he needed the lift to operate with him, his wife, and her wheelchair on it. As the lift was unable to do so, Mr. Gallagher announced that he no longer wanted the van.
 {¶ 11} In an effort to satisfy Mr. Gallagher, Mobility Works offered to take the van back as a trade-in, applying the entire purchase price toward a new vehicle. Mr. Gallagher refused. He later attempted to revoke his acceptance in writing, but Mobility Works refused to take the van back. Mr. Gallagher then sued Mobility Works alleging breach of contract and violations of the Ohio Consumer Sales Practices Act. *Page 6 
 STANDARD OF REVIEW {¶ 12} Mr. Gallagher's two assignments of error are that the trial court incorrectly granted summary judgment to Mobility Works on each of his claims. In reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard a trial court is required to apply in the first instance: whether there are any genuine issues of material fact and whether the moving party is entitled to judgment as a matter of law. Parenti v. Goodyear Tire Rubber Co.,66 Ohio App. 3d 826, 829 (1990).
 BREACH OF CONTRACT {¶ l3} Mr. Gallagher's first assignment of error is that the trial court incorrectly granted summary judgment to Mobility Works on his breach of contract claim. Mr. Gallagher sought revocation of his acceptance of the van under Section 1302.66 of the Ohio Revised Code. He has argued that the "as is" clause in the contract was "not in existence" after the sale because Mobility Works attempted subsequent repairs at no cost to Mr. Gallagher. Mobility Works has argued that it undertook the free repairs to foster good will with a customer and that these actions have no impact on the contract. Mr. Gallagher has not directed this Court's attention to any legal authority in support of his contention that Mobility Works' subsequent actions somehow negated the written contract or formed a new contract between the parties. App. R. 16(A)(7). As will be discussed more fully below, the revocation statute focuses on the situation at the *Page 7 
time of the buyer's acceptance of the non-conforming goods. R.C.1302.66. Subsequent actions of either party cannot change the buyer's actual situation at the time of his initial acceptance.
 {¶ 14} In order to properly revoke acceptance of a purchased good, a buyer must satisfy the requirements of the revocation statute. Section1302.66(A) of the Ohio Revised Code provides:
 The buyer may revoke his acceptance of a lot or commercial unit whose non-conformity substantially impairs its value to him if he has accepted it:
 (1) On the reasonable assumption that its non-conformity would be cured and it has not been seasonably cured; or
 (2) without discovery of such non-conformity if his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances.
The first question is whether there is a genuine issue of material fact created by the record regarding whether the van contained a "non-conformity."
 {¶ l5} Although the Revised Code does not define "non-conformity," according to Section 1302.01(A)(12), a "conforming good" is one that is "in accordance with the obligations under the contract." As this Court has previously held, both the terms of the contract and the law of warranty are relevant in determining the existence of a non-conformity.Cannon v. Neal Walker Leasing, Inc., 9th Dist. No. 16846, 1995 WL 404961
at *3 (June 28, 1995) (quoting 1 White Summers, Uniform Commercial Code 417 Section 8-4 (3d Ed. 1988)). *Page 8 
 {¶ 16} Mobility Works has argued that it sold this eleven-year-old van without any warranty by incorporating "as is — no warranty" language into the purchase contract. Section 1302.29(C)(1) of the Ohio Revised Code provides:
 unless the circumstances indicate otherwise all implied warranties are excluded by expressions like `as is,' `with all faults,' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty. . . .
(Emphasis added.) Under Section 1302.29(B), in order to be effective, all such statements must be conspicuous.
 {¶ 17} In this case, the warranty disclaimer language in the documents was conspicuous, appearing in several places in large capital letters. Mr. Gallagher has admitted he agreed to the "as is" language in regard to the van, but maintains he did not understand that the disclaimer applied to the attached wheelchair lift as well. Mr. Gallagher has failed to support this argument with any facts in the record that might indicate what discussion or other circumstances led him to that belief. App. R. 16(A)(7). This Court holds the "as is — no warranty" language of the purchase documents was sufficient to vitiate all implied warranties.
 {¶ 18} Mr. Gallagher has further claimed that he relied on the salesman's oral representation that the wheelchair lift would be safe for transporting Mrs. Gallagher. This claim raises the question of whether Mobility Works issued any oral express warranties to Mr. Gallagher. Contrary to Mobility Works' argument, the "as is" language of the contract does not mean that there can be no "non- *Page 9 
conformities]" under Section 1302.66(A) of the Ohio Revised Code. Although a conspicuous statement including "as is" language will vitiate all warranties implied by law, express warranties are not so easily vitiated. Barksdale v. Van's Auto Sales Inc., 62 Ohio App. 3d 724, 728
(1989). "`Express' warranties rest on `dickered' aspects of the individual bargain, and go so clearly to the essence of that bargain that words of disclaimer in a form are repugnant to the basic dickered terms." Official Comment 1 to R.C. Section 1302.26. The question is whether, in the course of this sale, Mobility Works created an oral express warranty and whether, if made, it survived the "as is" language of the contract.
 {¶ 19} Section 1302.29 of the Ohio Revised Code "is designed principally to deal with those frequent clauses in sales contracts which seek to exclude `all warranties, express or implied.'" Official Comment 1 to R.C. 1302.29. This section "seeks to protect a buyer from unexpected and unbargained language of disclaimer by denying effect to [written warranty disclaimers] when inconsistent with language of express warranty . . ." Official Comment 1 to R.C. 1302.29. To that end, Section 1302.29(A) requires that provisions of a written contract that purport to disclaim all warranties, express or implied, must be deemed inoperative to the extent such provisions cannot reasonably be construed as consistent with the seller's oral express warranty. Essentially, in such a conflict, the express oral warranty will prevail over the inconsistent written disclaimer. Kociubuk v. Huntington NationalBank, 8th Dist. No. 64551, 1994 WL 4169, at *8. This *Page 10 
section, however, specifically provides that it is to operate "subject to the provisions of section 1302.05 of the Revised Code on parol or extrinsic evidence." R.C. 1302.29(A).
 {¶ 20} Assuming, without deciding, that the parol evidence rule would have permitted testimony of a prior oral representation at trial in this case, the next question would be whether the statement that the lift was "safe" rises to the level of an express warranty. Revised Code Section1302.26 describes how an express warranty is created:
 (A)(1) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
 . . .
 (B) . . . but an affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty.
Express warranties are specific factual statements that go beyond mere "puffing" of the goods by the salesman. The specificity of the comment and the context in which it was made will impact the determination of whether a statement falls into the category of "puffing" versus affirmation of fact. Jackson v. Krieger Ford, Inc., 10th Dist. No. 88AP-1030, 1989 WL 29351 at *7 (Mar. 28, 1989). Under Ohio Revised Code Section 1302.26(B), a salesman's mere expression of opinion or commendation of the goods does not create an express warranty. The essential question is whether the representation is a clear affirmation of fact that became a *Page 11 
part of the basis of the bargain. Official Comment 8 to Ohio Revised Code Section 1302.26(B).
 {¶ 21} Assuming, for the purposes of summary judgment, that during negotiations the salesman told Mr. Gallagher the lift was "safe," that statement, standing alone, is not sufficiently specific to rise to the level of an express warranty. Mr. Gallagher has not accused the salesman of repeatedly stressing the "safety" of the lift or of elaborating on this statement in any way. There is no allegation that Mr. Graybill said, or was asked, anything more specific regarding the safety of the lift or its weight-bearing capacity. In light of the fact that this vehicle was eleven years old with an odometer reading of over 135,000 miles, this singular comment by the salesman could not reasonably be construed to be an express warranty. See O.R.C. Section 1302.26(B).
 {¶ 22} As this vehicle carried no warranties, either express or implied, it had no "non-conformity" for purposes of Section 1302.66 of the Ohio Revised Code. Accordingly, the trial court did not err by granting summary judgment to Mobility Works on Mr. Gallagher's breach of contract claim. Mr. Gallagher's first assignment of error is overruled.
 CONSUMER SALES PRACTICES ACT {¶ 23} Mr. Gallagher's second assignment of error is that the trial court incorrectly granted summary judgment to Mobility Works on his Consumer Sales Practices Act claim. Mr. Gallagher has argued that there were genuine issues of *Page 12 
material fact regarding whether Mobility Works engaged in deceptive and unconscionable acts by making deceptive representations to him during the course of their negotiations and in subsequent conversations after repairs were attempted. Specifically, Mr. Gallagher has argued that Mobility Works violated Sections 1345.02 and 1345.03 of the Ohio Revised Code in three ways: (1) before the sale, the salesman knew of the intended purpose of the lift and represented the vehicle was "safe" to do the job, when it was not; (2) after the sale, the salesman claimed Mobility Works replaced the pump on the wheelchair lift, when it had not; and (3) after the sale, Mobility Works told Mr. Gallagher this vehicle was sold "as is," when no such clause was in effect.
 {¶ 24} In response, Mobility Works has argued that any such statements, if made, would be negated by the "as is — no warranty" language contained in the purchase agreement. While this Court has determined that the "as is — no warranty" language was sufficiently conspicuous and clear to vitiate all implied warranties in this transaction, Mobility Works' argument is based on contract and warranty law. These defenses are not applicable to a Consumer Sales Practices Act claim, which is not based on the breach of any contract. Wall v. PlanetFord Inc., 159 Ohio App. 3d 840, 2005-Ohio-1207, at ¶ 25.
 A "SAFE" LIFT {¶ 25} Mr. Gallagher has argued that Mobility Works violated the Consumer Sales Practices Act in that, before the sale, the salesman knew of the *Page 13 
intended purpose of the lift and represented that it was "safe" for that purpose. The Ohio Consumer Sales Practices Act prohibits unfair, deceptive, and unconscionable acts or practices committed by suppliers in connection with consumer transactions. R.C. Sections 1345.02 1345.03. There is no dispute that the sale of this van to Mr. Gallagher was within the coverage of the Consumer Sales Practices Act.
 {¶ 26} Mobility Works has pointed out that the testimony regarding a representation about the safety of the lift first appeared from Mr. Gallagher in an affidavit supporting his response to Mobility Works' motion for summary judgment. Mobility Works has argued that Mr. Gallagher "filed a[n] affidavit attempting to contradict and change his own deposition testimony and assert that Mobility Works' representative assured him the vehicle was `safe.'" The Supreme Court of Ohio has held that,
 when an inconsistent affidavit is presented . . . in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the affiant's earlier sworn testimony. . . . A nonmoving party's contradictory affidavit must sufficiently explain the contradiction before a genuine issue of material fact is created.
Byrd v. Smith, 100 Ohio St. 3d 24, 2006-Ohio-3455, at ¶ 29.
 {¶ 27} Mr. Gallagher's affidavit, submitted after his deposition had been taken, asserted that the Mobility Works salesman "assured" him the vehicle was "safe." Although Mr. Gallagher did not mention this representation at his deposition, he was not asked any questions aimed at eliciting representations *Page 14 
Mobility Works' personnel may have made to him regarding the vehicle. The only question that elicited testimony remotely related to this topic was, "Do you have any reason to believe Mobility Works concealed something from you with regards to the operation of that lift?" Mr. Gallagher responded by explaining his belief that Mobility Works knew the lift was not safe. This testimony arguably could have led Mr. Gallagher to recall, and to mention, a pre-sale representation made by the salesman that the lift was in fact "safe." Mr. Gallagher did not, however, mention at any point in the deposition that the Mobility Works salesman assured him the lift was safe. By the same token, the lawyer for Mobility Works did not ask any questions regarding anything the salesman might have said to Mr. Gallagher in attempting to complete this sale. Regardless of the weight that might be afforded this type of testimony, the question at this point is whether the evidence may be used by Mr. Gallagher to show a genuine issue of material fact for the purpose of overcoming a motion for summary judgment. If the affidavit is merely supplemental, and not contradictory to the deposition testimony, it can create a genuine issue of material fact. Byrd v. Smith,100 Ohio St. 3d 24, 2006-Ohio-3455, at ¶ 29. Mr. Gallagher's deposition testimony regarding whether Mobility Works concealed something about the safety of the lift was not contradicted by his affidavit. Accordingly, the testimony presented by affidavit regarding the salesman's representation that the lift was "safe" must be included with the other properly submitted evidence in ruling on summary judgment. *Page 15 
 A "SAFE" LIFT: DECEPTIVE {¶ 28} The Consumer Sales Practices Act contains a broad prohibition against suppliers engaging in "unfair or deceptive" conduct in consumer transactions. R.C. Section 1345.02(A). The Act does not attempt to list every possible way in which it could be violated, but Section 1345.02(B) contains a list of examples of "deceptive" actions. In response to Mobility Works' motion for summary judgment in the trial court, Mr. Gallagher argued, based upon Section 1345.02(B)(1), that Mr. Graybill's statement that the lift was "safe" constituted a representation that the lift had either a "performance characteristic. . . . or benefit that [the lift] does not have." In the alternative, Mr. Gallagher has argued, based upon Section 1345.02(B)(2), that this constituted a representation that the lift was "of a particular standard, quality, [or] grade," which it was not. Either one, if proven, would be a violation of the plain language of Section 1345.02 of the Ohio Revised Code as the legislature has determined that these actions are "deceptive" and, therefore, prohibited by the Consumer Sales Practices Act.
 {¶ 29} In order to prove a violation of Section 1345.02 of the Ohio Revised Code, a consumer does not need to prove that the supplier actually intended to deceive him. Borror v. MarineMax of Ohio Inc., 6th Dist. No. OT-06-010, 2007-Ohio-562, at ¶ 37. "It is not a defense to show that the act was not done intentionally, or without knowledge that it was false, misleading or deceptive." Fletcher v. Don Foss ofCleveland Inc., 90 Ohio App. 3d 82, 86 (1993) (citing *Page 16 Thomas v. Sun Furniture Appliance Co., 61 Ohio App. 2d 78 (1978)). The consumer need only show the supplier's conduct had "the likelihood of inducing in the mind of the consumer a belief which is not in accord with the facts." Borror v. MarineMax of Ohio Inc., 6th Dist. No. OT-06-010, 2007-Ohio-562, at ¶ 37 (quoting Funk v. MontgomeryAMC/Jeep/Renault, 66 Ohio App. 3d 815, 823 (1990)).
 {¶ 30} Mr. Gallagher has accused Mobility Works, of representing that this wheelchair lift was "safe" for the purpose of transporting Mr. Gallagher's wife. Mr. Gallagher has testified that he relied on that representation in making this purchase. He has also testified that just two days after the sale, the lift collapsed with Mrs. Gallagher on it. According to Mr. Gallagher, he spent an hour and a half at the dealership on the day of the sale waiting while Mobility Works service technicians supposedly attempted to repair a problem with the lift. Mr. Graybill, the salesman, confirmed that he identified a problem with the lift on the day of the sale and he immediately sent the van to the service department. The record, however, does not contain any documentation that any repair was attempted at that time, despite the fact that documents do exist reflecting other repairs on the van's brakes just before the sale and subsequent repairs to the lift itself.
 {¶ 31} This conflicting evidence creates a genuine issue of material fact regarding whether this representation was made and, if it was, whether it had "the likelihood of inducing in the mind of the consumer a belief which is not in accord *Page 17 
with the facts." Borror v. MarineMax of Ohio Inc., 6th Dist. No. OT-06-010, 2007-Ohio-562, at ¶ 37 (quoting Funk v. MontgomeryAMC/Jeep/Renault, 66 Ohio App. 3d 815, 823 (1990)). Reasonable minds could find that Mr. Graybill represented that the lift was "safe" and either (1) described a performance characteristic or benefit the wheelchair lift did not have; or (2) described the lift as being of a particular standard, quality or grade, which it was not. To the extent that Mr. Gallagher's second assignment of error deals with a representation that the lift was "safe" as a violation of Section1345.02, it is sustained.
 A "SAFE" LIFT: UNCONSCIONABLE {¶ 32} Mr. Gallagher has also argued that this statement violated Section 1345.03 of the Ohio Revised Code. This section prohibits "unconscionable" acts or practices in connection with consumer transactions. Without attempting to divine every potential unconscionable act, the legislature listed, in Subpart (B), certain circumstances that must be considered in determining whether an act or practice is unconscionable. Mr. Gallagher alleged in his complaint that Mobility Works violated Section 1345.03 by "knowingly ma[king] a misleading statement of opinion on which [Mr. Gallagher] was likely to rely to his detriment." In response to the summary judgment motion in the trial court, Mr. Gallagher urged the court to focus on Section1345.03(B)(3) of the Ohio Revised Code:
 Whether the supplier knew at the time the consumer transaction was entered into of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction. *Page 18 
This section requires proof that the supplier knowingly took unfair advantage of the consumer. Wall v. Planet Ford Inc.,159 Ohio App. 3d 840, 2005-Ohio-1207, at ¶ 22.
 {¶ 33} Mr. Gallagher has argued that the lack of documentation regarding this pre-sale repair constitutes evidence that the representation was false. Mr. Gallagher deposed several members of the Mobility Works staff, including the general manager, two salesmen, a service manager, and two service technicians. Not surprisingly, the people in the service department did not recall working on this particular vehicle. Their testimony confirmed, however, that there are documents reflecting other repair work completed on the vehicle just before the sale as well as subsequent repair work to the lift. Their testimony also confirmed that there is no similar documentation reflecting any repairs to the lift occurring before the sale.
 {¶ 34} There is conflicting evidence in the record regarding whether Mobility Works completed any repair to the wheelchair lift prior to the sale. In light of the fact that a problem with the lift was identified just before the sale, this creates a genuine issue of material fact regarding whether the lift was "safe" and what the Mobility Works representatives knew about the utility of the lift before the sale. Accordingly, Mobility Works is not entitled to judgment as a matter of law on this issue. Reasonable minds could find that Mobility Works representatives either (1) "knowingly made a misleading statement of opinion on *Page 19 
which the consumer was likely to rely to [his] detriment," or (2) "knew at the time [of] the consumer transaction . . . of the inability of the consumer to receive a substantial benefit from the [wheelchair lift]." R.C. Sections 1345.03(B)(6) 1345.03(B)(3).
 POST-SALE REPAIR {¶ 35} Mr. Gallagher has argued that Mobility Works violated the Consumer Sales Practices Act by representing that it had replaced the pump on the wheelchair lift after the sale, when it had not. The plain language of the Consumer Sales Practices Act prohibits deceptive or unconscionable acts or practices "whether [they] occur before, during, or after the transaction." R.C. Sections 1345.02(A) 1345.03(A). In addition to the list of considerations for determining if an act is deceptive, found in Section 1345.02(B), the legislature also authorized the Attorney General to "[a]dopt . . . substantive rules defining with reasonable specificity acts or practices that violate sections 1345.02
[and] 1345.03." R.C. Section 1345.05(B)(2). These rules are found in the Ohio Administrative Code. R.C. 1345.05(F). Section 109:4-3-05(D)(9) of the Ohio Administrative Code provides that "it shall be a deceptive act or practice for a supplier to . . . [represent that repairs have been made or services have been performed when such is not the fact[.]" Accordingly, if Mobility Works represented that a repair had been made when it had not been made, Mobility *Page 20 
Works violated Section 1345.02 of the Ohio Revised Code because this conduct has been deemed "deceptive" under the rule.
 {¶ 36} The question is whether reasonable minds could differ as to whether Mobility Works actually replaced this pump as it claimed. Mobility Works has admitted its agents represented to Mr. Gallagher that the pump on the wheelchair lift had been replaced in March 2004, one month after the sale. In fact, Mobility Works presented documentation reflecting that two of their technicians spent seven hours on the project. Subsequently, Mr. Gallagher hired a mechanic to serve as an expert witness. This expert testified by affidavit that he inspected the lift sometime after March 2004 and found that the pump could not have been replaced as Mobility Works claimed. This conflicting evidence creates a genuine issue of material fact regarding whether Mobility Works violated the Consumer Sales Practices Act by representing that the pump on the wheelchair lift had been replaced when it had not. To the extent that Mr. Gallagher's second assignment of error relates to this allegation, it is sustained.
 "AS IS" SALE {¶ 37} Mr. Gallagher has argued that Mobility Works violated the Consumer Sales Practices Act by telling him this vehicle was sold "as is" when no such clause was in effect. Ohio Revised Code Section1345.02(B)(10) prohibits false representations regarding warranties. The Code does not, however, prohibit a valid disclaimer of implied warranties through conspicuous, clear language in *Page 21 
the contract that "in common understanding calls the buyer's attention to the exclusion of warranties." R.C. Section 1302.29(C)(1).
 {¶ 38} In this case, the words, "AS IS — NO WARRANTY," appeared in large, capital letters on the page entitled "Limited Warranty," which was signed by Mr. Gallagher. The contract specifically incorporated this Limited Warranty document by reference. The same words appeared on the "Buyers Guide" in large, bold letters and the box beside these words was checked. Federal Trade Commission rules require the Buyer's Guide to be posted on the vehicle and specifically incorporated into the sales contract. 16 C.F.R. Section 455.3(b). In this case, the contract did include the mandated language incorporating the "window form" or "Buyer's Guide" into the contract. This provision appeared just above Mr. Gallagher's signature.
 {¶ 39} This Court has determined that this contract included "as is — no warranty" language, effectively vitiating all implied warranties on the vehicle. Furthermore, the record contains no admissible evidence that Mobility Works created any oral express warranties that may not have been affected by the written disclaimer. Despite Mr. Gallagher's arguments that he does not recall signing or reading these documents, he has not disputed that his signature appears on them. Mr. Gallagher has admitted that he knew he was buying the van "as is." Mr. Gallagher has argued, however, that Mobility Works' actions after the sale, responding to his complaints and even offering free repairs, somehow vitiated the *Page 22 
contract he signed. Mr. Gallagher has not cited any legal authority in support of this argument. Nor has he presented any evidence tending to prove the elements of the formation of a new contract subsequent to the original contract.
 {¶ 40} This sale was completed "as is" without any warranty. Therefore, there is no genuine issue of material fact regarding whether Mobility Works violated the Consumer Sales Practices Act by representing this transaction to Mr. Gallagher as an "as is — no warranty" sale. To the extent that Mr. Gallagher's second assignment relates to this allegation, it is overruled.
 CONCLUSION {¶ 41} No genuine issue of material fact exists as to whether this vehicle had a "non-conformity" as is required for proper revocation under Section 1302.66 of the Ohio Revised Code. Mobility Works is entitled to judgment as a matter of law on Mr. Gallagher's breach of contract claim. Mr. Gallagher's first assignment of error is overruled.
 {¶ 42} A genuine issue of material fact exists regarding whether Mobility Works violated the Ohio Consumer Sales Practices Act by representing to Mr. Gallagher that certain repairs had been made and that the wheelchair lift was "safe" for transporting Mr. Gallagher's wife. Mr. Gallagher's second assignment of error is sustained. The judgment of the Summit County Common Pleas Court is reversed, and this matter is remanded for further proceedings consistent with this opinion. *Page 23 
Judgment affirmed in part and reversed in part and cause remanded.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.
Costs taxed to appellee.
 MOORE, J. CONCURS, SLABY, P. J. DISSENTS. *Page 1