**WALL, Appellant,**

v.

**PLANET FORD, INC., et al., Appellees.**

[Cite as *Wall v. Planet Ford, Inc.*, 159 Ohio App.3d 840, 2005-Ohio-1207.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 20501.

Decided March 18, 2005.

---

**14.** *Fed. Steel & Wire Corp. v. Ruhlin Constr. Co.* (1989), 45 Ohio St.3d 171, 173–174, 543 N.E.2d 769.

**15.** See *Mitchell,* supra note 2.

842

Charles W. Slicer III, for appellant.

Jay R. Langenbahn, for appellee.

FAIN, Judge.

{¶ 1} Plaintiff-appellant, Darleena Wall, appeals from a summary judgment rendered in favor of defendant-appellee Planet Ford, Inc. Wall contends that the trial court erred in rendering summary judgment in favor of Planet Ford on her fraud claims and claims based on violations of the Ohio Consumer Sales Practices Act because a genuine issue of material fact exists, and Planet Ford is not entitled to summary judgment as a matter of law.

{¶ 2} Based on Wall's deposition and the affidavits of Wall and Wall's brother, we conclude that the trial court erred in rendering summary judgment in favor of Planet Ford on Wall's CSPA claims, because there is a genuine issue of material fact whether Planet Ford promised to pay off the portion of Wall's home equity loan that was used to finance the purchase of her 1997 Mercury Mountaineer, and Planet Ford was not entitled to summary judgment as a matter of law. Regarding Wall's fraud claims, we conclude that the trial court did not err in rendering summary judgment in favor of Planet Ford, because the parol evidence rule is applicable and evidence of an alleged oral agreement at variance with the parties' written agreement was properly excluded from consideration.

{¶ 3} Accordingly, the judgment of the trial court is affirmed with respect to Wall's fraud claims but reversed with respect to Wall's CSPA claims, and this cause is remanded for further proceedings consistent with this opinion.

I

{¶ 4} In 1998, Darleena Wall and her husband purchased a 1997 Mercury Mountaineer, financing the purchase through a home equity loan obtained from Day Air Credit Union. The terms for repayment under the loan were $282.56 a month. The Walls used their home as collateral for the home equity loan, and Day Air Credit Union did not receive a lien on the title to the Mountaineer.

{¶ 5} In January 2003, Wall and her brother, Mark Kocher, visited Planet Ford, Inc., on several occasions in search of a new vehicle for Wall. At the time, Wall and her husband were separated and in the process of divorce. The divorce was finalized in April 2003. Pursuant to the divorce decree, Wall retained the Mountaineer as her own, free and clear of any claims of her husband, and became solely responsible for the indebtedness owed on the Mountaineer.

{¶ 6} On February 1, 2003, Wall, accompanied by her brother, signed a lease for a new 2003 Ford Taurus station wagon with Planet Ford. The retail lease order, signed by Wall, included a trade-in allowance for the Mountaineer in the amount of $5,000, as well as a $3,000 rebate, which Wall assigned to Planet Ford. The retail lease order also contained an integration clause providing: "The front

and back of the Document and any agreements attached hereto comprise the entire agreement affecting this Third Party Lease Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized." Wall obtained a loan from Fifth Third Bank to finance the lease for her Ford Taurus. The terms for repayment under the loan were $289.70 a month. Wall took possession of the Ford Taurus and gave Planet Ford possession of the Mountaineer. Wall did not deliver the title to the Mountaineer to Planet Ford.

{¶ 7} At the time of the transaction, Planet Ford advertised that it would pay off a loan "on" a vehicle if the customer wished to use it as a trade-in for purchasing a new vehicle. Wall averred, and testified at her deposition, that she repeatedly asked Planet Ford whether her home equity loan that she took out to purchase her Mountaineer would be paid off and that Planet Ford repeatedly assured her that it would be paid. Wall learned that Planet Ford failed to make any payment on her home equity loan.

{¶ 8} In May 2003, Wall filed a complaint against Planet Ford alleging claims based on fraud and violations of the Ohio Consumer Sales Practices Act ("CSPA"). Planet Ford filed an answer, with a counterclaim seeking an order to compel Wall to deliver the title to the Mountaineer to Planet Ford. Planet Ford then filed a motion for summary judgment, attaching the affidavit of Mitchell Gadd, Planet Ford's operations director. Wall filed a response in opposition to Planet Ford's motion for summary judgment, attaching the affidavits of Wall and her brother, Mark Kocher. A transcript of Wall's deposition was also filed with the trial court.

{¶ 9} The trial court granted Planet Ford's motion for summary judgment, concluding that based on the integration clause contained in the retail lease order, "it is clear that any issue with respect to Defendant's alleged oral agreement to pay off Plaintiff's home equity loan is moot." The trial court further found: "Defendant agreed to pay off the loan securing Plaintiff's motor vehicle. There was and is no loan securing Plaintiff's vehicle, and Defendant will not be required to pay off Plaintiff's home equity line of credit which is secured by real property in Ohio. This result, however, does not in any way vitiate Plaintiff's duty under the express terms of the lease contract to provide Defendant with proper title to the Mountaineer * * *." From the summary judgment rendered in favor of Planet Ford, Wall appeals.

## II

{¶ 10} Wall's first assignment of error is as follows:

{¶ 11} "The trial court erred to Ms. Wall's prejudice when it sustained appellee's motion for summary judgment on Ms. Wall's claims against appellee under the Ohio Consumer Sales Practices Act."

{¶ 12} Wall contends that the trial court erred in rendering summary judgment in favor of Planet Ford on her CSPA claims, because a genuine issue of material fact exists and Planet Ford is not entitled to summary judgment as a matter of law.

{¶ 13} We review the appropriateness of summary judgment de novo and follow the standards set forth in Civ.R. 56. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265. "Pursuant to Civ.R. 56, summary judgment is appropriate when (1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor." *Zivich v. Mentor Soccer Club, Inc.* (1998), 82 Ohio St.3d 367, 369–370, 696 N.E.2d 201. The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists on the essential elements of the nonmoving party's claims. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. Summary judgment must be denied if the moving party fails to satisfy its initial burden. Id. If the moving party satisfies its initial burden, the nonmoving party has a reciprocal burden of setting forth specific facts that demonstrate that a genuine issue of material fact exists to prevent summary judgment. Id. Summary judgment is appropriate if the nonmoving party fails to satisfy this burden. Id.

{¶ 14} Wall first contends that there is a genuine issue of material fact whether Planet Ford promised to pay off the portion of her home equity loan that was used to finance her purchase of her Mountaineer.

{¶ 15} In her affidavit, Wall averred that in January 2003, she went with her brother, Mark Kocher, to Planet Ford to look for a new vehicle. Wall stated that she talked to Marcus Thomas, a Planet Ford salesman, and asked him whether Planet Ford "could pay off" her truck. Wall stated, "Thomas came back with a particular dollar amount and it looked good. I then told them my truck was on a home equity loan and that my then husband is on the loan also. I then asked the question, does my husband need to come and sign anything?" Wall averred, "The sales manager took my bank card and called my bank to check on my line of credit and the amount of the loan." She averred that the sales manager later called her and told her that "he could work out a deal and also that they could pay off the loan" on her truck. Wall stated, "They did not say that they would pay off my Home Equity loans, just that they would pay off the truck loan. I kept asking is my loan going to be paid off. They said yes."

{¶ 16} Similarly, Wall testified at her deposition that she told Thomas that she owed money to Day Air Credit Union for a home equity loan that she had taken out to purchase her Mountaineer. She stated that she discussed with Thomas getting her home equity loan on her Mountaineer paid off in order to purchase the Ford Taurus. Wall stated that Thomas verified that she had a home equity loan with Day Air Credit Union and told her that they could help her get the Ford Taurus. She stated that she asked whether her home equity loan on her Mountaineer would be paid off and was told that it would be. In his affidavit, Wall's brother, Mark Kocher, corroborated Wall's statements, averring that "[a]fter extensive 'haggling' Markus [sic] made an offer that paid off the truck." Kocher averred, "During the signing of the papers Darleena asked several times about the truck and Planet Ford's paying off of the truck." Kocher averred that he "heard the salesman tell Darleena many times over, assuring her again and again that 'everything is taken care of.'" Kocher averred that he "was present at all times during the money negotiations, during the signing of all the papers, and during the phone call to the bank. After the calls, Darleena asked if her ex-husband needed to be present to sign anything, because of the loan being in both her name and her ex-husband's name. He said no."

{¶ 17} In support of its motion for summary judgment, Planet Ford submitted the affidavit of Mitchell Gadd, Planet Ford's Operations Director, who averred, "At the time of the transaction, Planet Ford advertised that it would pay off the loan *on* the vehicle a customer desires to trade-in when purchasing a new vehicle." Gadd stated, "Planet Ford did not advertise that it will pay off *any* of the customer's loans or debts, especially a home equity loan, if the customer trades in a used vehicle for the purchase of new vehicle." Gadd stated, "Planet Ford has no policy of paying off home equity loans and has never done so in the past."

{¶ 18} Planet Ford argues that there is no genuine issue of material fact because Wall concedes that Planet Ford did not state that it would pay off her home equity loan. Although Wall did concede in her affidavit that Planet Ford did not state that it would pay off her home equity loan, just her truck loan, her statement could reasonably be interpreted to mean that Planet Ford would pay the portion of her home equity loan used to finance her purchase of her Mountaineer—not her entire home equity loan, but the part of the loan that was used to pay for her truck.

{¶ 19} Planet Ford argues that it advertised that it would pay off loans that are secured by a lien on a vehicle and, therefore, that Wall did not have a loan to pay off because Wall's home equity loan was not secured by a lien on the Mountaineer. Planet Ford essentially argues that it did not represent to Wall that it would pay off the home equity loan she used to finance her purchase of her

Mountaineer, because the home equity loan was not secured by a lien upon the Mountaineer. Wall argues that she told Planet Ford that her Mountaineer was paid for with a home equity loan and that Planet Ford repeatedly assured her that it would pay her loan off.

{¶ 20} It appears that Planet Ford advertised only that it would pay off loans that are secured by a lien upon a vehicle. A jury might find it inherently unlikely that a car dealer would agree to pay off that part of the unpaid balance of a home equity loan corresponding to the proceeds from the loan used to purchase a vehicle offered as a trade-in for a newly leased car, but that is an argument Planet Ford should make to a jury. The fact remains that Wall and her brother have averred, and Wall has testified at her deposition, that Wall told Planet Ford that her loan was a home equity loan and Planet Ford said that it would pay off her loan. Therefore, we conclude, based upon the affidavits of Wall and Kocher, and Wall's deposition testimony, that there is a genuine issue of material fact whether Planet Ford promised to pay off the portion of Wall's home equity loan that was used to finance her purchase of her Mountaineer.

{¶ 21} Wall further contends that Planet Ford is not entitled to judgment as a matter of law, because Planet Ford's representations might violate R.C. 1345.02(A) and 1345.03(A) of the Ohio Consumer Sales Practices Act. R.C. 1345.02(A) prohibits a supplier from committing an unfair or deceptive act or practice in connection with a consumer transaction either before, during, or after the transaction. R.C. 1345.02(B) provides a list of representations made by the supplier that are considered to be deceptive, but it does not limit the scope of R.C. 1345.02(A). When claiming a violation of R.C. 1345.02(A), a consumer does not have to establish that the supplier intended to be unfair or deceptive. *Mannix v. DCB Service, Inc.*, Montgomery App. No. 19910, 2004-Ohio-6672, 2004 WL 2848921, at ¶ 18. " 'It is how the consumer views the act or statement which determines whether it is unfair or deceptive.' *Frey* [*v. Vin Devers, Inc.* (1992) ], 80 Ohio App.3d [1,] 6, 608 N.E.2d 796. The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract. Whether any given acts or practice may be unfair or deceptive is an issue of fact to be decided from all the relevant facts and circumstances in the particular case." (Citations omitted.) Id.

{¶ 22} R.C. 1345.03(A) prohibits a supplier from committing an unconscionable act or practice in connection with a consumer transaction either before, during, or after the transaction. Although the CSPA does not define what constitutes an unconscionable act or practice, R.C. 1345.03(B) provides a list of circumstances to be considered in determining whether a supplier knowingly took unfair advantage of a consumer.

{¶ 23} Wall claims that she told Planet Ford that she had a home equity loan that she used to finance her purchase of her Mountaineer and that she repeatedly asked Planet Ford whether her loan would be paid off on her truck, in response to which Planet Ford, after verifying the home equity loan with Day Air Credit Union, repeatedly assured her that it would, even at the time she signed a lease agreement that did not include paying off her loan. The affidavits of Wall and Kocher as well as the deposition of Wall support Wall's claims. In view of Planet Ford's assertion that it has "no policy of paying off home equity loans and has never done so in the past," it is reasonable to conclude that acts of Planet Ford alleged by Wall in this case amount to an unfair, deceptive, and unconscionable act in connection with a consumer transaction, when the evidence is construed most strongly in favor of Wall, the nonmoving party.

{¶ 24} Planet Ford contends that the integration clause in the retail lease order precludes Wall from alleging that a prior oral agreement existed and, therefore, that any oral representations made prior to the signing of the retail lease order are not a part of the agreement and are unenforceable. The integration clause in the retail lease order provides: "The front and back of the Document and any agreements attached hereto comprise the entire agreement affecting this Third Party Lease Agreement and no other agreement or understanding of any nature concerning the same has been made or entered into, or will be recognized." Wall contends that although Planet Ford's representations were made prior to her signing the retail lease order, which included an integration clause, the parol evidence rule does not apply to bar her CSPA claims. We agree.

{¶ 25} "Waiver, ratification, and other common law defenses do not apply to a claim under a law such as the Ohio Consumer Sales Practices Act because the claim is based not on the contract, but on oral or other misrepresentations. For the same reason, the statute of frauds, the parol evidence rule, contractual limitations on liability, and contractual limitations on remedies do not apply." *Doody v. Worthington*, Franklin Cty. M.C. No. M 9011CVI–37581, 1991 WL 757571, at *3, citing National Consumer Law Center, Unfair and Deceptive Acts and Practices (2d Ed.1988), Sections 4.2.15 and 5.2.4.

{¶ 26} Under her CSPA claims, Wall is not attempting to enforce the oral representations made by Planet Ford as part of her contract, but is claiming that Planet Ford's representations amounted to an unfair, deceptive, and unconscionable act in connection with a consumer transaction, in violation of the CSPA. The parol evidence rule is irrelevant in this sense.

{¶ 27} We conclude that the trial court erred in rendering summary judgment in favor of Planet Ford on Wall's CSPA claims, because a genuine issue of

material fact exists, and Planet Ford is not entitled to summary judgment as a matter of law.

{¶ 28} Wall's first assignment of error is sustained.

### III

{¶ 29} Wall's second assignment of error is as follows:

{¶ 30} "The trial court erred to Ms. Wall's prejudice when it sustained appellee's motion for summary judgment on Ms. Wall's claims against appellee for fraud and/or intentional misrepresentation."

{¶ 31} Wall contends that the trial court erred in rendering summary judgment in favor of Planet Ford on her fraud claims, because a genuine issue of material fact exists, and Planet Ford is not entitled to summary judgment as a matter of law. Planet Ford contends that the trial court properly rendered summary judgment in its favor because the integration clause in the retail lease order precludes Wall from using an assertion of a prior oral agreement to vary the terms of the parties' written contract, and any oral agreement made prior to the retail lease order is not a part of the agreement and is unenforceable. Planet Ford contends that the parol evidence rule prohibits Wall from using extrinsic evidence to demonstrate a prior oral agreement at variance with the terms of the written contract containing the integration clause. Wall contends that the parol evidence rule is inapplicable because the parol evidence rule does not prohibit using extrinsic evidence for the purpose of proving fraudulent inducement.

{¶ 32} The pivotal issue is whether Wall's fraud claims are barred by the parol evidence rule. In *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 734 N.E.2d 782, the Ohio Supreme Court discussed the parol evidence rule in depth. "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'" Id. at 27, 734 N.E.2d 782, quoting 11 Williston on contracts (4th Ed.1999) 569–570, Section 33:4. "'The point * * * is, not how the agreement is to be proved, because as a matter of law the writing is the agreement. Extrinsic evidence is excluded because it cannot serve to prove what the agreement was, this being determined as a matter of law to be the writing itself. The rule comes into operation when there is a single and final memorial of the understanding of the parties. When that takes place, prior and contemporaneous negotiations, oral or written, are excluded; or, as it is sometimes said, the written memorial supersedes these prior or contemporaneous negotiations.'" Id., quoting *In re Gaines' Estate* (1940), 15 Cal.2d 255, 264–265, 100 P.2d 1055.

{¶ 33} "Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." *Galmish,* 90 Ohio St.3d at 28, 734 N.E.2d 782. " 'Fraud cannot be merged; hence the doctrine, which is merely only another form of expression of the parol-evidence rule, that prior negotiations and conversations leading up to the formation of a written contract are merged therein, is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud.' " Id., quoting Annotation (1928), 56 A.L.R. 13, 34–36, "Stated differently, '[i]t was never intended that the parol evidence rule could be used as a shield to prevent the proof of fraud, or that a person could arrange to have an agreement which was obtained by him through fraud exercised upon the other contracting party reduced to writing and formally executed, and thereby deprive the courts of the power to prevent him from reaping the benefits of his deception or chicanery.' " Id., quoting 37 American Jurisprudence 2d (1968), 621–622, Fraud and Deceit, Section 451. "[T]his principle does not lose its force merely because the considered written agreement contains an integration clause. The parol evidence rule applies, in the first instance, only to integrated writings, and an express stipulation to that effect adds nothing to the legal effect of the instrument. The presence of an integration clause makes the final written agreement no more integrated than does the act of embodying the complete terms into the writing. Thus, the presence of an integration provision does not vitiate the principle that parol evidence is admissible to prove fraud." Id.

{¶ 34} "However, the parol evidence rule may not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.' *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio St.3d 265, 533 N.E.2d 325, paragraph three of the syllabus. In other words, '[t]he Parol Evidence Rule will not exclude evidence of fraud which induced the written contract. But, a fraudulent inducement case is not made out simply by alleging that a statement or agreement made prior to the contract is different from that which now appears in the written contract. Quite to the contrary, attempts to prove such contradictory assertions is exactly what the Parol Evidence Rule was designed to prohibit.' Shankers, Judicial Misuses of the Word Fraud to Defeat the Parol Evidence Rule and the Statute of Frauds (With Some Cheers and Jeers for the Ohio Supreme Court) (1989), 23 Akron L.Rev. 1, 7." (Citation omitted.) *Galmish,* 90 Ohio St.3d at 29, 734 N.E.2d 782.

{¶ 35} An example of a proper claim of fraudulent inducement that would not run afoul of the parole evidence rule would be a situation in which a pest

controller signs a homeowner to a contract for extensive termite-control measures, following an inspection of the premises, upon a misrepresentation that the house is infected with termites when, in fact, there is no termite infestation. The alleged oral misrepresentation is not at variance with the terms of the contract. The parties are in complete agreement as to the terms of the contract to which they agreed—certain services are be performed in exchange for the payment of money. But the contract, the terms of which are not in dispute, was induced by the seller's fraudulent representation that the house was infested with termites, when it wasn't.

{¶ 36} In this case, Wall contends that Planet Ford's oral representations fraudulently induced her into signing the retail lease order. However, her fraudulent-inducement claim rests upon allegations that the inducement to sign the retail lease order was a promise the terms of which are directly at variance with the retail lease order. Wall contends that part of the agreement in leasing the Ford Taurus was that Planet Ford would pay the portion of her home equity loan used to finance her purchase of her Mountaineer. However, the written agreement leasing the Ford Taurus, the retail lease order, makes no mention of paying off the portion of Wall's home equity loan used to purchase the Mountaineer, showing only that a $5,000 trade-in allowance would be given for the Mountaineer. Wall's contentions are directly at variance with the retail lease order. We cannot enforce the oral agreement, as alleged by Wall, in preference to the signed writing, the retail lease order, which pertains to exactly the same subject matter yet has different terms. See *Galmish*, supra.

{¶ 37} We conclude that the parol evidence rule does apply to Wall's fraud claims and that evidence of the alleged oral agreement was properly excluded from consideration with respect to Wall's fraud claims. Therefore, we conclude that the trial court did not err in rendering summary judgment in favor of Planet Ford on Wall's fraud claims.

{¶ 38} Wall's second assignment of error is overruled.

## IV

{¶ 39} Wall's first assignment of error having been sustained, and her second assignment of error having been overruled, the judgment of the trial court is affirmed with respect to Wall's fraud claims, the judgment is reversed with respect to Wall's CSPA claims, and this cause is remanded for further proceedings consistent with this opinion.

Judgment affirmed in part
and reversed in part,
and cause remanded.

WOLFF and GRADY, JJ., concur.