HACKER et al., Appellants,

v.

NATIONAL COLLEGE OF BUSINESS AND TECHNOLOGY, Appellee.

[Cite as *Hacker v. Natl. College of Business & Technology,*
186 Ohio App.3d 203, 2010-Ohio-380.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 23489.

Decided Feb. 5, 2010.

Jane E. Schreyer, for appellants.

Robert J. Gehring and Brian E. Hurley, for appellee.

——————

BROGAN, Judge.

{¶ 1} Debbie Hacker and Denise Crawford appeal from the trial court's entry of summary judgment in favor of appellee National College of Business and Technology ("National College") on their complaint for breach of contract, fraud, and a violation of the Ohio Consumer Sales Practices Act ("CSPA").

{¶ 2} In their sole assignment of error, the appellants contend that the trial court erred in entering summary judgment against them. They claim that the trial court incorrectly applied the summary-judgment standard, making credibility determinations and failing to construe the evidence most strongly in their favor. They also assert that the trial court overlooked a breach of contract, namely National College's failure to provide them with externships during their final term of study. Finally, they allege that the facts supporting the breach-of-contract claim also support their fraud and CSPA claims. .

{¶ 3} The record reflects that Hacker and Crawford both enrolled in a two-year course of study at National College to become surgical technicians. The women successfully completed all course work required for an associate's degree except Surgical Procedures II, which requires obtaining real-life "clinical" or externship experience. To complete Surgical Procedures II, students must spend 360 hours at a medical facility where they are evaluated by various individuals.

{¶ 4} Hacker completed her classroom work in November 2007. At that time, there were no externship sites available for her to complete Surgical Procedures II. She waited, however, and eventually began an externship at Sycamore Hospital in January 2008. Hacker was at Sycamore Hospital from January 21, 2008, to January 30, 2008. Based on Hacker's evaluations, Michelle Boniella, the director of National College's surgical-technology program, decided to remove her from the site so she could practice in the school's mock operating room and "get better with her clinical skills." Upon completing additional lab work at the school, Hacker performed an externship at Far Hills Surgical Center from February 25, 2008, through March 2, 2008. After considering additional evaluations, Boniella met with Hacker to discuss her future. According to Hacker, Boniella advised her that she was failing and gave her a choice between receiving a failing grade and withdrawing from the surgical-technology program. Boniella also advised Hacker to consider transferring into National College's medical-assistant program. Hacker never returned to the school after the meeting.

{¶ 5} Crawford completed her classroom work in August 2007. At that time, no externship sites were available for her either. She waited and was placed at Atrium Medical Center in January 2008. Crawford served her externship at Atrium for four days, January 21 through 24. After several evaluations and Boniella's own on-site evaluation, Boniella met with Crawford on January 25, 2008. According to Crawford, Boniella told her that she was not going back to Atrium. Boniella advised her to consider transferring into a medical-coding or medical-assistant program at National College. Crawford never returned to the school after the meeting.

{¶ 6} On September 10, 2008, Hacker and Crawford filed a complaint against National College, alleging breach of contract, fraud, and a CSPA violation. National College moved for summary judgment, and the trial court sustained the motion on May 13, 2009. The trial court found the existence of a contract based on the appellants' payment of fees, enrollment at National College, and attendance there. The trial court found no genuine issue of material fact, however, as to whether National College breached the contract. In particular, the trial court found no evidence of any policy or standard breached by National College concerning the externship positions. The trial court noted that Hacker and Crawford both began externships but were removed due to performance prob-

lems that were documented by several people. The trial court also found National College entitled to summary judgment on the fraud and CSPA claims. The trial court found no evidence that National College made any false representation, much less a knowingly false representation. Finally, the trial court found no genuine issue of material fact as to whether National College had committed an "unconscionable act or practice" under the CSPA.

{¶ 7} On appeal, the appellants first assert that the trial court weighed the evidence and made credibility determinations. In support, they cite the trial court's indication that it was "persuaded" on one issue and "not convinced" on another. The appellants also accuse the trial court of improperly resolving some factual disputes while overlooking others. Rather than addressing these contentions in the abstract—as the appellants do at the outset of their argument—we will proceed to our de novo review, which will correct any defect in the trial court's application of the summary-judgment standard.[1] Cf. *Nolan v. City Wide Dev. Corp.*, Montgomery App. No. 22675, 2009-Ohio-65, 2009 WL 50611, ¶ 30.

{¶ 8} Under Civ.R. 56, summary judgment is proper only when (1) there is no genuine issue as to any material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 375 N.E.2d 46. When evaluating a summary-judgment motion, a court must construe the evidence in a light most favorable to the nonmoving party, and the moving party has the burden of establishing that there is no genuine issue as to any material fact. Id. This burden can be met only by identifying specific facts in the record, including "the pleading[s], depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any," which indicate the absence of genuine issues of material fact. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264. The moving party successfully discharges its burden by establishing that the nonmoving party's case lacks the necessary evidence to support its claims. Id. at 289–290, 662 N.E.2d 264. Once this burden has been met, the nonmoving party then has a reciprocal burden as outlined in Civ.R. 56(E), which provides that the "adverse party may not rest upon the mere allegations or denials of [the party's] pleadings" but "must set forth specific facts showing that there is a genuine issue for trial." If the nonmoving party does not

---

1. We note, however, that the trial court merely used the word "persuaded" in the context of finding itself "persuaded that the Defendant is entitled to summary judgment." Later, the trial court found itself "not convinced" that a breach of contract occurred. These statements do not necessarily indicate improper weighing of the evidence.

respond or identify specific facts to demonstrate a genuine issue of material fact, summary judgment is proper. Id.

{¶ 9} On the contract issue, the trial court's decision identified two potential breaches: (1) failure to provide externship sites when Hacker and Crawford were ready to begin and (2) removing them from externship sites too quickly after they were placed there. Although the trial court's ruling is not entirely clear, it appears to have accepted National College's argument that Hacker and Crawford waived any breach of contract related to their initial inability to be placed. On the latter issue, the trial court concluded that Hacker and Crawford were removed from their externships for documented performance reasons and that the decision to remove them did not constitute a breach of contract.

{¶ 10} On appeal, Hacker and Crawford expressly disclaim any attempt to establish a breach of contract based on National College's removing them from externships for allegedly deficient performance. Instead, they insist that National College breached the contract by failing to provide them with externships during their final term. The appellants assert that National College "attempted (and succeeded) to draw the trial court's attention away from this conclusion by attacking the Plaintiffs' later performances, which are not material to the breach of contract claim." The appellants reason that "[b]y the time [they] could begin to perform in the externship setting, the contract already had been breached; the term in which the final course was to be completed had already passed without the Defendant providing the externship sites to the Plaintiffs." Therefore, they insist that their "performances are not actually material to the issues," and they urge us to "avoid the trial court's pitfall into an irrelevant factual dispute about [their] performances."

{¶ 11} Because Hacker and Crawford have limited their argument on appeal, we will confine our analysis to whether National College breached its contract with them by failing to provide externships immediately upon their completion of all classroom work. As set forth above, Hacker completed her classroom work in November 2007. Crawford completed her classroom work in August 2007. Due to a lack of available sites, National College did not place the women in externships until January 2008. Even if this delay constituted grounds for asserting a breach, National College contended below, and maintains on appeal, that Hacker and Crawford waived strict performance of a time requirement when they waited and allowed themselves to be placed in externships in January 2008.

{¶ 12} We agree with National College. "[A] party may relinquish a right by either express words or by conduct which seems to dispense with performance at the designated time." *Wright v. Basinger*, Mahoning App. No.

01CA81, 2003-Ohio-2377, 2003 WL 21054727, ¶ 39, citing *N. Olmsted v. Jennings* (1993), 91 Ohio App.3d 173, 631 N.E.2d 1130. Even if time is of the essence, a time requirement "may be waived when the party to be benefitted 'does any act inconsistent with the supposition that he continues to hold the other party to his part of the agreement.'" *Sandler v. AII Acquisition Corp., Inc.* (C.A.6, 1992), 954 F.2d 382, 385, quoting *Hayes Mfg. Corp. v. McCauley* (C.A.6, 1944), 140 F.2d 187, 190.

{¶ 13} In the present case, Hacker and Crawford permitted National College's delay in placing them in externships. By waiting and accepting the externships in January 2008, the women engaged in conduct inconsistent with holding National College to a strict time requirement. We note too that the appellants did not even raise the delay issue as a breach of contract until after they were placed in the externships and removed following their poor evaluations. Under these circumstances, we find that the appellants waived National College's contractual obligation to place them in externships during their last regular term of enrollment. They certainly waived any right they might have had to rescind the contract when they accepted the externships. *English v. Natl. Cas. Co.* (1941), 138 Ohio St. 166, 169, 20 O.O. 201, 34 N.E.2d 31. Even assuming, purely arguendo, that the appellants did not waive their ability to seek damages by engaging in conduct inconsistent with holding National College to a strict time requirement, their counsel at oral argument twice failed to identify or quantify any damages, other than possible emotional distress, resulting from their delay in obtaining externships. We note that "Ohio law does not allow recovery for emotional distress from a breach of contract." *Hokes v. Ford Motor Co.,* Summit App. Nos. 22502 and 22577, 2005-Ohio-5945, 2005 WL 2995112, ¶ 30, citing *Strawser v. Wright* (1992), 80 Ohio App.3d 751, 755, 610 N.E.2d 610. We see no genuine issue of material fact precluding summary judgment for National College.

[6, 7] {¶ 14} We are equally unpersuaded by the appellants' argument regarding their fraud claim. "The elements of an action in fraud are as follows: (a) a representation or, where there is a duty to disclose, concealment of a fact (b) that is material to the transaction at hand (c) made falsely with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying on it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Langford v. Sloan,* 162 Ohio App.3d 263, 2005–Ohio–3735, 833 N.E.2d 331, ¶ 10, citing *Gaines v. Preterm–Cleveland, Inc.* (1987), 33 Ohio St.3d 54, 55, 514 N.E.2d 709.

{¶ 15} In support of their fraud claim, Hacker and Crawford contend that National College enrolled too many students and had too few externship sites

available. They argue: "Defendant knew it was accepting more students than it could place in externship sites and pass through the program. It had knowledge of the falsity of its promise to provide the full program and all its required courses. It is not enough, as explained previously, for the trial court to simply find that the Defendant 'offered' the full program. The point is that it could not provide the program it offered, it knew it when it enrolled students into the program, but accepted two years of tuition and fee payments from students anyway and then failed to get them through the final required course."

{¶ 16} Upon review, we conclude that National College was entitled to summary judgment on the fraud claim. The appellants cite no evidence that National College knew when it accepted them that no externships would be available immediately upon completion of their classroom work. During her deposition, Crawford recalled having a conversation with Michelle Boniella, the director of the surgical-technology program. During the conversation, Boniella told Crawford that "the program had just opened and they hadn't really ironed out all the kinks." According to Crawford, Boniella explained that "they were letting a lot of students in at one time, at any time without planning on what to do with them." Boniella provided similar testimony in her own deposition. She acknowledged that when Hacker and Crawford attended, no specific assessment was done to estimate whether enough externship sites would be available for incoming students. This testimony certainly might support a finding of poor planning for the fledgling surgical-technology program, but it does not reasonably support an inference that National College made a knowingly false representation about the availability of externships with the intent to mislead the appellants. Moreover, even assuming, arguendo, that National College did make a knowingly false representation about the immediate availability of an externship, the appellants did not demonstrate any injury proximately caused by reliance on the representation. This is so because they agreed to wait and ultimately were placed in externships. Thus, the trial court properly entered summary judgment against the appellants on the fraud claim.

{¶ 17} We turn next to the appellants' argument regarding their CSPA claim. Hacker and Crawford assert on appeal that National College violated the CSPA by not providing the full surgical-technology program during their regular term of enrollment. Once again, their argument concerns National College's delay in providing externships.

{¶ 18} In response, National College contends that the trial court properly entered summary judgment on the CSPA claim because the school "offered the full Surgical Technology program to Appellants, and there was no deceptive act or practice that would give rise to [the] claim." National College insists that requiring Hacker and Crawford to wait several months for an externship does not

mean it failed to offer the full program. National College also argues that the appellants did not provide any factual support for their CSPA claim, either in the trial court or on appeal.

{¶ 19} Upon review, we conclude that National College failed to demonstrate its entitlement to summary judgment on the CSPA claim. In support of summary judgment, National College argued below that it did not promise Hacker and Crawford passing grades or guarantee them a degree. It also argued that its instructors were entitled to exercise professional judgment in evaluating the performance of Hacker and Crawford. In opposition to summary judgment, Hacker and Crawford maintained that National College had violated the CSPA by accepting too many students in the surgical-technology program without having sufficient externship sites for them to complete their degree requirements in a timely manner. According to Hacker and Crawford, the school made a false or deceptive representation when it accepted their tuition that they would receive the full surgical-technology program during their course of study. At the conclusion of their memorandum in opposition to summary judgment, Hacker and Crawford asserted that "the externship requirement was not provided as promised to these plaintiffs when they were ready." In reply, National College asserted that Hacker and Crawford had waived the delay by waiting and being placed in externships. Because they eventually did obtain externships, National College also insisted there was no misrepresentation.

{¶ 20} For its part, the trial court concluded, and the parties do not dispute, that National College is subject to the CSPA. The trial court held, however, that the school was entitled to summary judgment because it offered Hacker and Crawford "the full program." The trial court reasoned that "[s]imply because the Plaintiffs had to wait several months for their externship opportunities does not mean that the Defendant did not offer the full program." Finally, the trial court noted that the course catalog for the surgical-technology program identified Surgical Procedures II as a requirement but stated that it was "[b]ased on availability."

{¶ 21} The CSPA provides that "[n]o supplier shall commit an unfair or deceptive act or practice in connection with a consumer transaction." R.C. 1345.02(A). "Although the CSPA uses the words 'unfair' and 'deceptive,' a consumer is not required to demonstrate that a supplier intended to be unfair or deceptive. 'It is how the consumer views the act or statement which determines whether it is unfair or deceptive.' The basic test is one of fairness; the act need not rise to the level of fraud, negligence, or breach of contract. Whether any given act or practice may be unfair or deceptive is an issue of fact to be decided from all the relevant facts and circumstances in the particular case." (Citations

omitted.) *Mannix v. DCB Serv., Inc.*, Montgomery App. No. 19910, 2004-Ohio-6672, 2004 WL 2848921, ¶ 18.

{¶ 22} Construing the evidence most strongly in the appellants' favor, we believe a genuine issue of material fact remains as to whether National College made an unfair or deceptive representation, at the time appellants enrolled in the surgical-technology program, that the required externships would be available during the final term of the two-year program. As set forth above, Crawford testified during her deposition that Boniella told her "they were letting a lot of students in at one time, at any time without planning on what to do with them." For her part, Boniella admitted that when Hacker and Crawford attended, no specific assessment was done to estimate whether enough externship sites would be available for incoming students. Nevertheless, National College represented to incoming students that it would provide them with a course of study culminating in a required externship during the final term. Based on the evidence before us, a trier of fact reasonably might find that this representation was unfair or deceptive when viewed from the perspective of Hacker and Crawford. This is particularly true in light of the fact that Hacker and Crawford ultimately had to wait several months before obtaining the externships and Boniella's admission that National College had no real idea how many students it could accommodate.

{¶ 23} In reaching the foregoing conclusion, we note that requiring a consumer to wait for performance under a contract may constitute a CSPA violation. For example, in *Knoth v. Prime Time Marketing Mgt., Inc.*, Montgomery App. No. 20021, 2004-Ohio-2426, 2004 WL 1077822, we found a genuine issue of material fact as to whether a supplier violated the CSPA when it made inaccurate representations regarding the delivery date of furniture, which was delivered months late. We were unpersuaded by the supplier's argument that there necessarily was no violation because it relied on information obtained from the manufacturer. Nor were we persuaded by the supplier's argument that its projections about the furniture delivery date were not necessarily untrue at the time they were made. We recognized that if a supplier is not in a position to determine a delivery date with accuracy, it should not make affirmative representations regarding the date. Id. at ¶ 26–31.

{¶ 24} Similarly, a trier of fact reasonably might find that National College represented, through its course materials, that it would provide Hacker and Crawford with a course of study culminating in an externship during the final term. Due to poor planning, however, National College admittedly provided Hacker and Crawford with externships several months late. For purposes of the CSPA claim, it makes no difference that Hacker and Crawford may have waived National College's liability for breach of contract. We have recognized that the common-law doctrine of waiver does not apply to a statutory claim under the

CSPA. *Wall v. Planet Ford, Inc.*, 159 Ohio App.3d 840, 2005-Ohio-1207, 825 N.E.2d 686. Nor does it matter that Hacker and Crawford cannot establish fraud. As set forth above, an act need not rise to the level of fraud, negligence, or breach of contract to constitute a CSPA violation.[2] *Mannix*, 2004-Ohio-6672, 2004 WL 2848921, at ¶ 18.

{¶ 25} Finally, we are unpersuaded by the trial court's determination that the course catalog for the surgical-technology program designated Surgical Procedures II as being "[b]ased on availability." In the catalog, the Surgical Procedures II course has one asterisk beside the course code. At the bottom of the page is a corresponding single asterisk with the notation "Check course description for successful completion of course requirement(s)." Also at the bottom of the page is a triple asterisk with the notation "Based on availability." There is no corresponding triple asterisk, however, anywhere near the Surgical Procedures II course. Thus, while some courses offered by National College may be "[b]ased on availability," the Surgical Procedures II externship requirement does not appear to be one of them. At a minimum, a genuine issue of material fact exists concerning the meaning of the triple asterisk.

{¶ 26} Based on the reasoning set forth above, we overrule the appellants' assignment of error insofar as it challenges the trial court's entry of summary judgment on the breach-of-contract and fraud claims. We sustain the assignment of error, however, insofar as it relates to the trial court's entry of summary judgment on the CSPA claim. The trial court's judgment is affirmed with regard to the breach-of-contract and fraud claims. The judgment is reversed with regard to the CSPA claim.

> Judgment affirmed in part
> and reversed in part,
> and cause remanded.

GRADY and FROELICH, JJ., concur.

---

2. We note too that the appellants' admitted inability to establish damages for purposes of their breach-of-contract claim does not necessarily preclude recovery under the CSPA. Under certain circumstances, a plaintiff pursuing a claim under the CSPA is entitled to statutory damages where no actual damages exist. See, e.g., R.C. 1345.09(B). We need not decide the availability of statutory damages here, however, as neither party has raised the issue. The parties remain free to address this issue in the trial court on remand.