[Cite as *Katz, Teller, Brant & Hild, L.P.A. v. Farra*, 2011-Ohio-1985.]

IN THE COURT OF APPEALS FOR MONTGOMERY COUNTY, OHIO

KATZ, TELLER, BRANT & HILD LPA        :

    Plaintiff-Appellee        :        C.A. CASE NO.    24093

v.        :        T.C. NO.    09CV5148

DONALD FARRA        :        (Civil appeal from
                                    Common Pleas Court)
    Defendant-Appellant        :

                                            :

         . . . . . . . . . .

**O P I N I O N**

Rendered on the ___22nd___ day of ___April___, 2011.

. . . . . . . . . .

JAMES F. McCARTHY, III, Atty. Reg. No. 0002245, 255 East Fifth Street, Suite 2400, Cincinnati, Ohio 45202
    Attorney for Plaintiff-Appellee

JOSHUA A. LILES, Atty. Reg. No. 0078060, 202 E. Central Avenue, Miamisburg, Ohio 45342
    Attorney for Defendant-Appellant

. . . . . . . . . .

FROELICH, J.

{¶ 1}  Donald Farra appeals from a judgment of the Montgomery County Court of Common Pleas, which granted the motion of Katz, Teller, Brant & Hild, LPA, for summary judgment on Farra's counterclaims.  For the following reasons, the trial court's judgment

will be affirmed.

I

**{¶ 2}** In June 2009, Katz, Teller, Brant & Hild, LPA ("KTBH") filed a Complaint for Money Damages against Farra, asserting claims for breach of contract, unjust enrichment, and action on account due to Farra's alleged failure to pay for legal services rendered in Farra's eminent domain litigation against Sinclair Community College. The law firm alleged that Farra owed $84,516 in unpaid legal bills.

**{¶ 3}** On July 23, 2009, Farra filed an Answer, which denied KTBH's allegations and raised six counterclaims.[1] The first counterclaim alleged that Farra's contractual relationship with KTBH resulted from the law firm's use of high pressure tactics and a statement by Attorney James F. McCarthy III that "the legal fees he would incur would be paid by the opposing parties because of a recent clarification in eminent domain law, (The 125% rule)." The second, third, and fourth counterclaims alleged that McCarthy, Sheri Autonberry, and Jerome Bishop, respectively, all of whom were associated with KTBH and represented Farra, substantially delayed Farra's eminent domain litigation, contrary to his wishes. The fifth counterclaim alleged that Farra had detrimentally relied on assurances by McCarthy concerning the competence of the real estate appraiser and the soundness of his appraisals. The sixth counterclaim asserted that McCarthy withheld items of research after KTBH's representation was terminated.[2]

---

[1] Farra also filed a third-party complaint against American Research and Appraisal Center and E. Pike Levine, who were retained by Farra to perform an appraisal and potentially testify during depositions and at trial in the eminent domain case. Farra subsequently dismissed his third-party complaint.

[2] Farra moved to have McCarthy, Autonberry, and Bishop joined as

**{¶ 4}** KTBH subsequently moved for summary judgment on its claims and on Farra's counterclaims. KTBH supported its motion with numerous documents, including an affidavit by McCarthy, the engagement letter signed by McCarthy and Farra, itemized billing documents, and invoices. Farra opposed the motion. He submitted his own affidavit with supporting documentation, as well as an affidavit by John Ebersole, Farra's original counsel who was rehired after Farra terminated KTBH's representation.

**{¶ 5}** Upon review of the evidence submitted by the parties, the trial court found that genuine issues of material fact existed as to whether Farra had authorized certain actions by KTBH, for which KTBH had sought payment; the trial court denied KTBH's motion for summary judgment on its own claims. However, the court granted KTBH's motion as to Farra's counterclaims. It found that counterclaims two through six were legal malpractice claims, for which the one-year statute of limitations had run. As to the first counterclaim, the court concluded that Farra had adequately pled a claim of fraudulent inducement, but that the parol evidence rule barred Farra's evidence of the alleged misrepresentation. The court reasoned, in part:

**{¶ 6}** "Here, the parties agreed within the engagement letter, signed by both parties, Defendant would be personally responsible for payment of fees. Further, payment of all fees are due upon receipt of invoices. Defendant seeks to introduce evidence of an oral promise to contradict an unambiguous term of payment within the parties' agreement. As a

---

necessary parties under Civ.R. 19. The court denied the motion, stating that "[b]ecause KTBH is vicariously liable for the breaches of contract, torts, or acts of malpractice committed by its employees, the Court finds that the individual attorneys are not indispensable parties to this action."

result, Defendant's counterclaim based on fraudulent inducement cannot stand."

{¶ 7} By a separate entry, the court certified its decision as a final appealable order under Civ.R. 54(B).

{¶ 8} Farra appeals from the trial court's summary judgment decision.

II

{¶ 9} In his sole assignment of error, Farra claims that the trial court erred when it granted KTBH's motion for summary judgment on his counterclaims.

{¶ 10} Summary judgment should be granted only if no genuine issue of material fact exists, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to but one conclusion, which is adverse to the nonmoving party. Civ.R. 56; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66. An appellate court reviews summary judgments de novo, meaning that we review such judgments independently and without deference to the trial court's determinations. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588.

{¶ 11} Upon a motion for summary judgment, the moving party bears the initial burden of showing that no genuine issue of material fact exists for trial. *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 292-93. Once the moving party satisfies its burden, the nonmoving party may not rest upon the mere allegations or denials of the party's pleadings. Id.; Civ.R. 56(E). Rather, the burden then shifts to the non-moving party to respond, with affidavits or as otherwise permitted by Civ.R. 56, setting forth specific facts which show that there is a genuine issue of material fact for trial. Id. Throughout, the evidence must be construed in favor of the non-moving party. Id.

A. *Legal Malpractice (Counterclaims Two through Six)*

{¶ 12} Farra claims that trial court erred in granting summary judgment on counterclaims two through six. Farra does not argue that the court improperly construed those claims as legal malpractice claims. Rather, he asserts that genuine issues of material fact exist as to whether the statute of limitations had run.

{¶ 13} At the outset, we agree with the trial court that counterclaims two through six are legal malpractice claims. The crucial consideration in determining the applicable statute of limitations in an action is the actual nature or subject matter of the cause, rather than the form in which the complaint is styled or pleaded. *Hunter v. Shenango Furnace Co.* (1988), 38 Ohio St.3d 235, 237, superceded by statute on other grounds. "Claims arising out of an attorney's representation, regardless of the label attached, constitute legal malpractice claims ***." *Cleveland Constr., Inc. v. Roetzel & Andress, L.P.A.*, Cuyahoga App. No. 94973, 2011-Ohio-1237, ¶24, citing *Illinois Natl. Ins. Co. v. Wiles, Boyle, Burkholder & Bringardner Co., L.P.A.,* Franklin App. No. 10AP-290, 2010-Ohio-5872, ¶15.

{¶ 14} Counterclaims two through six alleged that KTBH attorneys substantially delayed Farra's eminent domain litigation, made assurances concerning the competence of the real estate appraiser and the soundness of the appraisals for that case, and withheld items of research after KTBH's representation was terminated. Each of these claims arises out of the legal representation by KTBH attorneys and constitutes a claim for legal malpractice.

{¶ 15} Legal malpractice claims are subject to a one-year statute of limitations. R.C. 2305.11(A). The statute of limitations begins to run "when there is a cognizable event whereby the client discovers or should have discovered that his injury was related to his

attorney's act or non-act and the client is put on notice of a need to pursue his possible remedies against the attorney or when the attorney-client relationship for that particular transaction or undertaking terminates, whichever occurs later." *Zimmie v. Calfee, Halter & Griswold* (1989), 43 Ohio St.3d 54, syllabus, citing *Omni-Food & Fashion, Inc. v. Smith* (1988), 38 Ohio St.3d 385. The attorney-client relationship terminated in January 2008, and the counterclaims were filed on July 23, 2009.

{¶ 16} Farra argues that the eminent domain case has resulted in "volumes of motions, pleadings, and memorandum, not to mention a jury trial, two appeals, and motions for post-trial relief. The complexity of the issues in this case and the voluminous information were not fully realized until well after the jury trial which occurred in May 2008." Farra asserts that he did not know the ramifications of KTBH's representation until "later in 2008," and thus the running of the statute of limitations was tolled until that time.

{¶ 17} As stated above, the second, third, and fourth counterclaims concerned allegations that KTBH attorneys substantially delayed the eminent domain litigation. According to Farra's affidavit, KTBH was hired in late July 2007. Farra instructed the firm that he did not want to prolong the eminent domain case and wanted to go to trial as soon as possible. Farra indicated that he learned in November 2007 that objections to a magistrate's decision had been filed by KTBH attorneys, contrary to his wishes. KTBH's representation was terminated in early January 2008; the trial in the eminent domain case did not occur until May 2008. Based on Farra's own statements, it is apparent that he was aware of the delay caused by the filing of the objections by the May 2008 trial date, at the latest. The trial court did not err in concluding that counterclaims two, three, and four,

brought in July 2009, were untimely.

{¶ 18} Farra's fifth counterclaim related to McCarthy's assurances regarding the appraiser, Pike Levine. The alleged assurances were made to Farra during KTBH's representation. According to Ebersole, upon resuming his representation of Farra, he prepared for a deposition of Levine. Ebersole "reviewed the appraisals prepared by Mr. Levine and found several obvious and serious discrepancies. These problems, I believe led Mr. Farra to seek a new expert witness. With the help of a new expert, I proceeded to represent the Farras throughout the jury trial and an award for the properties. ***"

{¶ 19} Eberesole's affidavit established that Farra was aware of McCarthy's assurances in 2007 and realized the need to replace Levine, contrary to McCarthy's assurances, prior to the May 2008 trial. Accordingly, Farra's cause of action for legal malpractice based on McCarthy's assurances accrued prior to the May 2008 trial. The trial court properly concluded that the fifth counterclaim was brought after the statute of limitations had run.

{¶ 20} Finally, the sixth counterclaim related to Farra's claim that McCarthy had withheld research from Ebersole. Attached to Farra's affidavit was a letter to McCarthy, dated May 22, 2008, in which Farra states: "*** you [McCarthy] have a lot of research and you have transcript items that were not in the file you gave to John M. Ebersole." This correspondence established that Farra's cause of action related to the withheld research accrued more than one year before the counterclaim was filed. The trial court properly found that the statute of limitations also barred the sixth counterclaim.

B. *Fraudulent Inducement (Counterclaim One)*

{¶ 21} Farra further claims that the trial court erred in granting summary judgment on his first counterclaim, which states a claim for fraudulent inducement. Farra asserts that McCarthy's oral representation should be considered under the fraud exception to the parol evidence rule and that the parties' affidavits are "so vastly different" that issues of material fact exist. In response, KTBH argues that Farra did not demonstrate that he reasonably relied on any alleged promises by McCarthy, because the engagement letter signed by Farra addressed how KTBH's fees would be paid. KTBH further argues that, even if parol evidence of McCarthy's alleged statements were admissible, McCarthy's alleged statements were a promise of future behavior by Sinclair Community College, which cannot support a claim for fraudulent inducement.

{¶ 22} "[T]he elements of fraudulent inducement are: (1) an actual or implied false representation concerning a fact or, where there is a duty to disclose, concealment of a fact, (2) which is material to the transaction; (3) knowledge of the falsity of the representation or such recklessness or utter disregard for its truthfulness that knowledge may be inferred; (4) intent to induce reliance on the representation; (5) justifiable reliance; and (6) injury proximately caused by the reliance." *Simon Property Group, L.P. v. Kill,* Allen App. No. 1-09-30, 2010-Ohio-1492, ¶17. "Fraudulent inducement must be proven by clear and convincing evidence." Id., citing *Mid-America Tire, Inc. v. PTZ Trading Ltd.,* 95 Ohio St.3d 367, 2002-Ohio-2427, ¶62.

{¶ 23} The primary issue is whether Farra's fraudulent inducement claim is precluded by the parol evidence rule. "The parol evidence rule is a rule of substantive law that prohibits parties to a contract from later contradicting the express terms of the contract

with evidence of other alleged or actual agreements. Absent claims of fraud, mistake or some other invalidating cause, the parties' written agreement may therefore not be varied, contradicted, or supplemented by or on account of evidence of prior or contemporaneous oral agreements, or by written agreements which the terms of the principal contract do not expressly authorize." *Evilsizor v. Becraft & Sons Gen. Contractors, Ltd.*,156 Ohio App.3d 474, 2004-Ohio-1306, ¶12 (internal citations omitted). "The principal purpose of the parol evidence rule is to protect the integrity of written contracts." *Galmish v. Cicchini* (2000), 90 Ohio St.3d 22, 27. "By prohibiting evidence of parol agreements, the rule seeks to ensure the stability, predictability, and enforceability of finalized written instruments." Id.

{¶ 24} "Nevertheless, the parol evidence rule does not prohibit a party from introducing parol or extrinsic evidence for the purpose of proving fraudulent inducement." Id. at 28. "'Fraud cannot be merged; hence the doctrine, which is merely only another form of expression of the parol-evidence rule, that prior negotiations and conversations leading up to the formation of a written contract are merged therein, is not applicable to preclude the admission of parol or extrinsic evidence to prove that a written contract was induced by fraud.'" Id., quoting Annotation, Parol-Evidence Rule (1928), 56 A.L.R. 13, 34-36.

{¶ 25} "However, the parol evidence rule many not be avoided 'by a fraudulent inducement claim which alleges that the inducement to sign the writing was a promise, the terms of which are directly contradicted by the signed writing. Accordingly, an oral agreement cannot be enforced in preference to a signed writing which pertains to exactly the same subject matter, yet has different terms.'" *Wall v. Planet Ford, Inc*., 159 Ohio App.3d. 840, 2005-Ohio-1207, ¶34, quoting *Marion Prod. Credit Assn. v. Cochran* (1988), 40 Ohio

St.3d 265, paragraph three of the syllabus.

**{¶ 26}** In *Wall*, we provided an example of a proper claim of fraudulent inducement that would not run afoul of the parol evidence rule. *Wall* at ¶35. We stated that such a situation would exist if a pest controller signed a homeowner to a contract for extensive termite-control measures, following an inspection of the premises, upon a misrepresentation that the house was infested with termites when, in fact, there was no termite infestation. The parties would be in complete agreement as to the terms of the contract to which they agreed, i.e., certain services would be performed in exchange for the payment of money, and the alleged oral misrepresentation would not be at variance with the terms of the contract. But the contract, the terms of which were not in dispute, was induced by the contractor's fraudulent representation that the house was infested with termites, when it was not. Id.; See, for another example, *Kill*, supra (affirming trial court's finding that commercial landlord fraudulently induced tenant to execute a permanent lease at shopping mall).

**{¶ 27}** KTBH supported its summary judgment motion with an "Engagement of Counsel" letter from McCarthy to Farra, dated July 27, 2007. That letter attached KTBH's "Terms of Engagement," which set forth KTBH's billing practices, legal fees, payment terms, and termination of representation provision.

**{¶ 28}** McCarthy's letter summarized various provisions in the Terms of Engagement. McCarthy informed Farra that McCarthy could not provide a quote of the total fees for services to be rendered and that the firm bills in increments of 1/10 of an hour. With regard to his hourly rate, McCarthy stated, "I will bill you for professional services at a rate of $385.00 per hour." He indicated that the time spent on Farra's case by other

attorneys would be billed at their hourly rate and that hourly rates are adjusted upward once each year. He explained the matters to which the hourly rate would apply and told Farra that he (Farra) would also be responsible for the firm's out-of-pocket expenses related to the case. McCarthy further wrote: "It is also the practice of our firm to request a retainer when we represent clients for the first time. Please remit a retainer in the amount of $3,000.00 with this engagement letter. We will hold the retainer for payment of fees at the conclusion of our engagement."

{¶ 29} At the conclusion of the engagement letter, McCarthy wrote: "If these terms are satisfactory to you, please indicate acceptance by signing the enclosed copy of this letter in the space provided and return the signed copy to us. We also would ask that you agree to be personally responsible for the payment of our fees. The second copy is for your files. I am very pleased to have the opportunity to represent you. If you have any questions about this engagement letter, please let me know."

{¶ 30} Farra signed the engagement letter on July 27, 2007.

{¶ 31} In his affidavit in opposition to KTHB's summary judgment motion, Farra stated that he came into contact with KTHB by the insistence of his then-appraiser, Levine, who had called McCarthy and told him (McCarthy) about Farra's involvement in an eminent domain case. Farra stated that McCarthy came to his home and "used what I believe to be high pressure sales tactics to persuade me to hire him and his firm." After Farra told McCarthy that he already had an attorney and could not afford McCarthy's hourly rate, McCarthy responded that Farra "would not have to pay the legal fees but, Sinclair [Community College] would be responsible for the payment because of a revision in the law

(125% rule). McCarthy told me that I would need to pay $3,000.00 as 'good faith' money but my legal fees would be paid by Sinclair." Farra stated that he signed the engagement letter because he relied on McCarthy's promises that he would not be responsible for the legal bills. Farra does not present himself as particularly unsophisticated in these matters; he stated in a July 12, 2008 affidavit – which was submitted in the eminent domain case and attached to KTBH's motion for summary judgment – that he has been involved in over 100 real estate transactions.

{¶ 32} The phrase in the engagement letter that "[w]e also would ask that you agree to be personally responsible for the payment of our fees" does seem out-of-place or at least superfluous in an agreement the entire purpose of which is to create personal liability. This added language could justify an inference that there had been some discussion about the law firm's seeking payment from another person or entity, perhaps Sinclair Community College.

{¶ 33} Regardless, as we detailed above, because of the parol evidence rule, any such discussion cannot create a genuine issue of material fact when it is directly contradicted by the written agreement. Even if the phrase in the engagement letter were to be considered as evidence of such discussion, it more likely suggests a hope by the parties that Sinclair would be responsible for all or part of the fees, but a simultaneous explicit acknowledgement that Farra was ultimately "personally responsible."

{¶ 34} Farra's sworn statements that McCarthy told him that he (Farra) would not have to pay the legal fees and that Sinclair Community College would be responsible for the payment directly contradicted the contractual agreement between Farra and KTBH. By signing the engagement letter, Farra agreed to KTBH's legal fee structure, its billing

procedures, and its payment terms. Farra agreed to be personally responsible for payment of the law firm's fees and that, upon termination of KTBH's engagement, the law firm would be "entitled to receive from you payment for our fees for services rendered and for costs incurred through the date of such termination." Nothing in the agreement indicated that Farra would not be held responsible for his legal fees and/or that KTBH would be required to seek payment of its fees solely from Sinclair Community College, the opposing party in Farra's eminent domain case.

{¶ 35} Because Farra's evidence regarding McCarthy's statements was inconsistent with the terms of the contract between Farra and KTBH, the parol evidence rule precluded Farra's claim based on McCarthy's oral statements concerning the payment of Farra's legal bills.

{¶ 36} The trial court properly granted summary judgment to KTBH on all of Farra's counterclaims. The assignment of error is overruled.

III.

{¶ 37} The trial court's judgment will be affirmed.

. . . . . . . . . .

GRADY, P.J. and BROGAN, J., concur.

(Hon. James A. Brogan, retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).

Copies mailed to:

James F. McCarthy, III
Joshua A. Liles
Hon. Connie S. Price